# EXHIBIT A

As requested by Counsel Goetzl and Counsel Kennedy; I, Rami Elhusseini - plaintiff- hereby respectfully present a rephrasing of my complaint.

(1) I am suing Compass Group and Restaurant Associates for racial discrimination in contrast with the requirements of fair employment and malicious interference for conspiring to cover up their racial agenda and intent to cause personal psychological harm and economical ruin.

(2) As asked to by counsel Goetzl I will elaborate on my allegations; it is my belief that the intentions behind Restaurant Associates' actions towards its employees -a sizable amount of which reside in halfway houses, or are newly released from juvenile detention- aim at cutting off these employees from any alternative source of income like a parallel job by overworking them and by discouraging them from pursuing dual careers to avoid either a (3) pink slip during downsizing in the slow season or lack of promotion. Openly threatening that termination of employment with RA can result in the inability to work at any other museum on the mall or at any of the branches (4) of the biggest restaurateur company in the US was frequent. Thus such a policy creates a dependant personality willing to cross the lines of moral and legal boundaries in certain instances, like illicit drug peddling and sexual favors to gratify a self created elite of managerial cadre sharing not competence or creative innovation but sheer Arian traits and belonging to a militia like clique extending up to the director of human resources and the arbitration department like the ombudsman mediating for "Compass" as it were.

(5) All that and more takes place under the roof of the Smithsonian Institute no less, a few yards away from the Capitol. (6) I was denied promotion and advancement in the company Restaurant Associates despite my competitive qualifications on both the applied and academic levels. (7) Promotions in the company as far as cooks hire is concerned are dispensed according to Arian features criteria for chef positions or on pseudo-utilitarian ends for line cooks, if an employee is not white -although in my case I'd checked in the white box for race on my application as I identify like a white man- nor white enough must correspond to a place in a hierarchy where he can either be a peddler, an absolutely subdued gofer or a closeted paramour. (8) The advantages were the possibility of advancement despite lack of qualifications and other perks like eating enough at lunch since the allocated portions were not nearly satisfying with the required work load behind the serving line or at the kitchen for example.

(9) I was asked to drop out of school –notably Howard University, so I'd be more available during the opening month. (10) I was promised a position in the kitchen as it became available but since I was noticeably competent on the (11) serving line I was asked to revert to line server during the rush hours. I was asked to train new employees but never in a trainer's capacity. (12) The kitchen position was awarded to a new comer to the company; a less experienced and academically less equipped candidate but who unquestionably had the whiter traits. (13) I was terminated at his request ensuing an altercation with a young man he referred to as a "treat" despite the altercation physically being under the jurisdiction of the DCPD not on nor even near the workplace nor on company time and in spite of being actually threatened by my colleague who mastered the juvenile detention dialect and was often referred to as "dangerous" and "crazy" by his companions.

(14) I also endured a harsh and condescending treatment by the human resources director who was behind employing the "whiter" less competent chef, she claimed that laying my hand on a white employee cost me my job, despite the fact that I am white and the fact that I was attacked in an earlier altercation by a different employee on the serving station inside the restaurant; yet without any serious consequence and regardless of more serious altercations between employees involving the brandishing of knives which weren't even addressed. (15) Maybe due to the fact that the employees in questions were "black" and that such behavior fit their corresponding slot in the company's adopted hierarchy.

(16) Despite my good performance I was denied awards, and conspired against to dismiss any awards I got against the will of my supervisors. (17) The possible reasoning behind it was probably to eliminate any cause for legal complaint, I was awarded performance recognition once by a general manager in the company who happened to notice the quality of my work, and whom I hope would testify to that affect if asked to by Honorable Judge Walton. (18) My direct supervisor had to announce my award but after consulting with more than one party which leads me to make allusion to conspiracy, she awarded the same recognition to several employees who weren't as competent for the sole effect of diluting the effect an award of the sort might have on bolstering my claim to a promotion. (19) These are the main lines of my case; more details will surely be elaborated during litigation.

Respectfully submitted on the 1/31/06
Rami Elhusseini, Pro se.