## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RAMI ELHUSSEINI

       Plaintiff,

       v.

COMPASS GROUP USA, INC., et al.

       Defendants.

**Case No. 1:06-cv-00100-RBW**
**FILED VIA ECF**

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rules 7 and 56.1, Defendants Compass Group USA, Inc. and Restaurant Associates, Inc., by counsel, hereby move the Court for an Order granting summary judgment in their favor on all of Plaintiff's claims.

This case involves Plaintiff Rami Elhusseini who claims that Defendants denied him a promotion due to discrimination, terminated him due to discrimination, and intentionally inflicted emotional distress upon him.

Plaintiff cannot establish a claim of discriminatory denial of promotion. First, Plaintiff cannot prove three of the four required elements of the prima facie case - that he was qualified for the cook position to which he was not promoted, that he applied for the cook position and was considered for the cook position, and either that RA sought applicants who were no more qualified than him or that RA awarded the cook position to such a person. Second, assuming that Plaintiff could establish a prima facie case, RA has a legitimate, nondiscriminatory reason for not promoting him. Both of the individuals RA hired as cooks are indisputably more qualified than Plaintiff. Third, Plaintiff has no evidence of pretext. Plaintiff concedes that the

decision maker with respect to the filling of the cook positions never made any discriminatory comments. In addition, the fact that the decision maker also hired Plaintiff only six months earlier drastically undercuts Plaintiff's allegations of discrimination. Furthermore, Plaintiff's belief that he was qualified to be promoted to a cook position is irrelevant in light of the fact that the decision maker did not believe so.

Similarly, Plaintiff cannot establish a claim of discriminatory termination. First, Plaintiff cannot prove a prima facie case because he has no evidence that Defendants treated a similarly situated person from outside the protected class differently than he. In fact, Plaintiff conceded in his deposition that he knows of no such similarly situated person. Second, assuming that Plaintiff could establish a prima facie case of discriminatory termination, Defendants have legitimate, nondiscriminatory reasons for terminating him. Specifically, RA terminated Plaintiff for clocking out without permission and starting a fight with a coworker. Plaintiff admitted in his deposition that RA's reasons for his termination are true. Third, Plaintiff again has no evidence of pretext. Plaintiff admits that none of the people involved in his termination ever made any discriminatory comments. Plaintiff's belief that he was terminated due to alleged discrimination is simply insufficient to defeat Defendants' summary judgment motion.

Lastly, Plaintiff cannot show that Defendants' actions – not promoting him to a position for which he was not qualified and terminating him for admittedly clocking out without permission and starting a fight with a coworker - were sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress. Nor can Plaintiff show that Defendants' alleged conduct intentionally or recklessly caused his alleged emotional distress.

For the foregoing reasons, Defendants Compass Group USA, Inc. and Restaurant Associates, Inc. respectfully request that the Court grant their Motion for Summary Judgment.

2

Dated:  December 20, 2006

Respectfully submitted,

LITTLER MENDELSON, P.C.

By:   /s/ Katherine A. Goetzl
Paul J. Kennedy (D.C. Bar No. 428623)
Katherine A. Goetzl (D.C. Bar No. 457660)
1150 17th Street N.W., Suite 900
Washington, DC  20036
202.842.3400  telephone
202.842.0011  facsimile

Counsel for Defendant Compass Group USA, Inc.
and Defendant Restaurant Associates, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that, on December 20, 2006, a copy of the foregoing Defendants' Motion

for Summary Judgment was served by first class mail, postage prepaid, upon the following:

Rami Elhusseini
2517 Mozart Place, NW
Apt. 103
Washington, DC  20009

Plaintiff pro se

/s/ Katherine A. Goetzl
Katherine A. Goetzl

Firmwide:81724182.1 024778.1145

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAMI ELHUSSEINI

Plaintiff,

v.

COMPASS GROUP USA, INC., et al.

Defendants.

Case No. 1:06-cv-00100-RBW
FILED VIA ECF

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Civil Rules 7 and 56.1, Defendants Compass Group USA, Inc. and

Restaurant Associates, Inc. ("RA" or "Company"), by counsel, submit this Memorandum of

Points and Authorities in Support of their Motion for Summary Judgment.

## I. INTRODUCTION

This case involves Plaintiff Rami Elhusseini who claims that Defendants denied him a

promotion due to discrimination,[1] terminated him due to discrimination, and intentionally

inflicted emotional distress upon him.

Plaintiff cannot establish a claim of discriminatory denial of promotion. First, Plaintiff

cannot prove three of the four required elements of the prima facie case - that he was qualified

for the cook position to which he was not promoted, that he applied for the cook position and

was considered for the cook position, and either that RA sought applicants who were no more

---

[1] Though this case was filed one year ago and discovery is now complete, it is still unclear to
Defendants upon what characteristic or characteristics Plaintiff believes he was discriminated.
Defendants' best guess, based upon Plaintiff's deposition testimony, is that it is a combination of
national origin and religion.

qualified than him or that RA awarded the cook position to such a person.  Second, assuming that Plaintiff could establish a prima facie case, RA has a legitimate, nondiscriminatory reason for not promoting him.  Both of the individuals RA hired as cooks are indisputably more qualified than Plaintiff.  Third, Plaintiff has no evidence of pretext.  Plaintiff concedes that the decision maker with respect to the filling of the cook positions never made any discriminatory comments.  In addition, the fact that the decision maker also hired Plaintiff only six months earlier drastically undercuts Plaintiff's allegations of discrimination.  Furthermore, Plaintiff's belief that he was qualified to be promoted to a cook position is irrelevant in light of the fact that the decision maker did not believe so.

Similarly, Plaintiff cannot establish a claim of discriminatory termination.  First, Plaintiff cannot prove a prima facie case because he has no evidence that Defendants treated a similarly situated person from outside the protected class differently than he.  In fact, Plaintiff conceded in his deposition that he knows of no such similarly situated person.  Second, assuming that Plaintiff could establish a prima facie case of discriminatory termination, Defendants have legitimate, nondiscriminatory reasons for terminating him.  Specifically, RA terminated Plaintiff for clocking out without permission and starting a fight with a coworker.  Plaintiff admitted in his deposition that RA's reasons for his termination are true.  Third, Plaintiff again has no evidence of pretext.  Plaintiff admits that none of the people involved in his termination ever made any discriminatory comments.  Plaintiff's belief that he was terminated due to alleged discrimination is simply insufficient to defeat Defendants' summary judgment motion.

Lastly, Plaintiff cannot show that Defendants' actions – not promoting him to a position for which he was not qualified and terminating him for admittedly clocking out without permission and starting a fight with a coworker - were sufficiently extreme and outrageous to

2

support a claim for intentional infliction of emotional distress. Nor can Plaintiff show that Defendants' alleged conduct intentionally or recklessly caused his alleged emotional distress.

Because Plaintiff cannot show that Defendants' reasons for not promoting him and for terminating him are a pretext for discrimination, summary judgment should be entered in Defendants' favor on Plaintiff's discrimination claims. Likewise, because Plaintiff cannot show that Defendants' actions were extreme and outrageous or intentionally or recklessly caused his alleged emotional distress, summary judgment should be entered in Defendants' favor on Plaintiff's intentional infliction of emotional distress claim. In sum, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

## II. STATEMENT OF FACTS[2]

### Plaintiff Interviews To Work At RA

Plaintiff first interviewed to work at RA with Tara Peralta, Sous Chef at the Mitsitam Café at the National Museum of the American Indian ("NMAI"), in late August or early September 2004. Facts ¶ 3. Ms. Peralta did not make any discriminatory remarks during Plaintiff's interview. Facts ¶ 4.

A few days after his interview with Ms. Peralta, Plaintiff had a second interview to work at RA with Richard Hetzler, Chef at the Mitsitam Café. Facts, ¶ 5. Mr. Hetzler did not make any discriminatory remarks during Plaintiff's interview. Facts ¶ 6. Mr. Hetzler decided to hire Plaintiff as a Line Server. Facts, ¶ 7.

---

[2] Defendants are simultaneously filing a Statement of Undisputed Material Facts ("Facts") as required by Local Civil Rules 7(h) and 56.1.

### Plaintiff Begins Working At RA

Plaintiff began working as a Line Server at RA on or about September 8, 2004. Plaintiff's Depo. pp. 73-74. Facts, ¶ 8. Plaintiff's pay rate when he started at RA was $10 per hour. Facts, ¶ 9.

Plaintiff received a copy of RA's Employee Handbook when he started working at RA. Facts, ¶ 10. Mr. Hetzler explained the policies contained in the RA Employee Handbook to all of the RA employees, including Plaintiff. Facts, ¶ 11. Plaintiff was familiar with the Equal Employment Opportunity Policy, the Open Door Policy, the Workplace Violence Policy, and the Standards of Behavior contained in RA's Employee Handbook. Facts, ¶ 12. Plaintiff read the Employee Handbook before he signed an Acknowledgement of Receipt for the Handbook. Facts, ¶ 13. While Plaintiff worked for RA, he saw the postings regarding Equal Employment Opportunity, the Zero Tolerance Discrimination and Harassment Policy, and the BeAware hotline. Facts, ¶ 14. While Plaintiff worked for RA, he also received an Interoffice Memo regarding the Open Door Policy. Facts, ¶ 15.

Plaintiff's duties as a Line Server were to clean and prepare the food station at the start of his shift, serve food to customers and maintain the food station during his shift, and clean the food station at the end of his shift. Facts, ¶ 16. While Plaintiff worked at RA, he asked for and received some training in the kitchen. Facts, ¶ 17.

### RA Hires Two New Cooks

Plaintiff believes he should have been promoted to cook in March 2005. Facts, ¶ 18. However, Plaintiff never filled out an application or did anything to apply for a cook position. Facts, ¶ 19.

4

In or around March 2005, RA hired Derek Pipher as a cook and Janette O'Sullivan as a cook.  Facts, ¶ 20.  Plaintiff does not know how many years of experience as a sous chef or cook Mr. Pipher had, how many years of experience in food service Mr. Pipher had, or at how many restaurants Mr. Pipher worked before joining RA.  Facts, ¶ 21.  Before RA hired him, Mr. Pipher had more than 15 years experience in the food industry, and had worked as a chef or a cook at four restaurants over the course of eight years.  Facts, ¶ 22.  Plaintiff does not know how many years of experience as a sous chef or cook Ms. O'Sullivan had, how many years of experience in food service Ms. O'Sullivan had, or at how many restaurants Ms. O'Sullivan worked before joining RA.  Facts, ¶ 23.  Before RA hired her, Ms. O'Sullivan had worked as a chef at five restaurants over the course of more than six years, and had graduated from culinary school.  Facts, ¶ 24.

The minimum qualifications for the cook positions obtained by Mr. Pipher and Ms. O'Sullivan were:  (1) one year cooking experience in a high volume kitchen; (2) ability to use knife and demonstrate basic knife skills; (3) ability to work independently with speed and accuracy; and (4) ability to read and understand basic menu techniques.  Facts, ¶ 25.  Plaintiff was not qualified for nor considered for either of the cook positions filled by Mr. Pipher and Ms. O'Sullivan.  Facts, ¶ 26.  Mr. Hetzler decided to hire Mr. Pipher and Ms. O'Sullivan.  Facts, ¶ 27.

While he was employed by RA, Plaintiff never complained to anyone at RA about Mr. Pipher and Ms. O'Sullivan being hired as cooks or that he thought he did not get a cook position because of discrimination.  Facts ¶¶ 28-29.

In May 2005, Plaintiff's performance was rated at the high end of the "Meets Expectations" range.  Facts, ¶ 30.

5

Plaintiff's Arguments With His Coworker In August 2005

On August 12, 2005, Plaintiff had an argument with a coworker named Chris Spangler. Facts, ¶ 31. Plaintiff and Mr. Spangler were working on the same food station that day. Facts, ¶ 32. Plaintiff was critiquing Mr. Spangler's work performance because Mr. Spangler was a new RA employee, and Mr. Spangler allegedly made disparaging remarks about Plaintiff being homosexual and threatened to beat Plaintiff up. Facts, ¶ 33. Other RA employees working at the food station and customers waiting in line at the food station heard Mr. Spangler's remarks. Facts, ¶ 34. Plaintiff reported the argument with Mr. Spangler to either Ms. Peralta or Mr. Hetzler that day. Facts, ¶ 35.

On August 12, Plaintiff and Mr. Spangler met with Mr. Hetzler and Mr. Pipher. Facts, ¶ 36. During the meeting, Mr. Hetzler told Plaintiff and Mr. Spangler that they had to work together and to put their problems behind them. Facts, ¶ 37. Both Plaintiff and Mr. Spangler went back to work after the August 12 meeting and finished their shifts. Facts, ¶ 38.

The next day - on August 13 - Plaintiff had another argument with Mr. Spangler. Facts, ¶ 39. Plaintiff and Mr. Spangler were working on the same food station again that day. Facts, ¶ 40. Plaintiff was again critiquing Mr. Spangler's work performance, and Mr. Spangler again allegedly made disparaging remarks about Plaintiff being homosexual and threatened to beat Plaintiff up. Facts, ¶ 41. Like on August 12, other RA employees working at the food station and customers waiting in line at the food station heard Mr. Spangler's remarks. Facts, ¶ 42.

Plaintiff did not report the August 13 argument to anyone at RA that day. Facts, ¶ 43.

Plaintiff's Fist Fight With His Coworker

At or around 4 pm on August 13, Plaintiff accompanied Mr. Spangler down to the locker room at work. Facts ¶ 44. Both Mr. Spangler and Plaintiff clocked out at around 4 pm. Facts ¶

45. Mr. Spangler had permission to leave work at 4 pm that day. Facts ¶ 46. However, Plaintiff admittedly did not have permission to clock out from work at 4 pm that day. Facts ¶ 47.

Plaintiff followed Mr. Spangler outside NMAI and across the street to the Air & Space Museum. Facts ¶ 48. Plaintiff grabbed Mr. Spangler's arm and a fist fight broke out. Facts ¶ 49. At the end of the fist fight, Plaintiff grabbed Mr. Spangler's sunglasses, stepped on the sunglasses and broke them. Facts ¶ 50.

After the end of the fist fight, Plaintiff returned to NMAI and reported to Mr. Pipher that his locker was damaged. Facts ¶ 51. Plaintiff did not report either the August 13 argument or the fist fight. Id. Mr. Pipher took pictures of the damaged locker and allowed Plaintiff to store his personal belongings in the office. Facts ¶ 52. Plaintiff clocked back into work around 4:30 pm, worked for another hour, and then clocked out at 5:30 pm, the end of his shift for the day. Facts ¶ 53.

<u>The Events Of August 14, 2005</u>

On August 14, Plaintiff went to work at 9 am as scheduled. Facts ¶ 54. When he arrived at work, Plaintiff was summoned to the office by Mr. Pipher. Facts ¶ 55. Mr. Pipher asked Plaintiff what had happened with Mr. Spangler the previous day. Facts ¶ 56. Plaintiff told Mr. Pipher that what had happened outside NMAI was his personal business. Facts ¶ 57. Mr. Pipher told Plaintiff not to work on the same station as Mr. Spangler, not to talk to Mr. Spangler, and not to talk to anyone about what had happened the previous day. Facts ¶ 58.

Later that day, Plaintiff met with Ms. Peralta and Mr. Pipher. Facts ¶ 59. Ms. Peralta told Plaintiff that she was investigating what had happened on August 13 and that Plaintiff was suspended until the investigation was complete. Facts ¶ 60. Plaintiff was sent home after the August 14 meeting with Ms. Peralta and Mr. Pipher. Facts ¶ 61.

<u>The Events Of August 16, 2005</u>

On August 16, 2005, Ms. Peralta called Plaintiff and asked him to come in to meet with her and Larry Ponzi, Director of the Mitsitam Café. Facts ¶ 62. That day, Plaintiff met with Ms. Peralta, Courtney Willis, Controller of the Mitsitam Café, and Mr. Ponzi. Facts ¶ 63. During the meeting, Plaintiff wrote his account of the fist fight. Facts ¶ 64. Plaintiff was terminated for clocking out without permission and starting a fight with a coworker. Facts ¶ 65.

No one made any discriminatory remarks during the August 16 meeting. Facts ¶ 66. Plaintiff does not know of any RA employee who has clocked out without permission and started a fight with a coworker and not been terminated. Facts ¶ 67.

Plaintiff believes someone in RA's Human Resources Department discriminated against him with respect to the cook promotion and the termination of his employment. Facts ¶ 68. Plaintiff believes he was discriminated against because he is of Lebanese national origin and has pro-Zionist beliefs. Facts ¶ 69. Plaintiff has no evidence that anyone in RA's Human Resources Department knew of his pro-Zionist beliefs or his Lebanese national origin. Facts ¶ 70. While Plaintiff worked at RA, no manager ever made any discriminatory comments. Facts ¶ 71.

<u>Plaintiff Contacts Defendants After His Termination</u>

On August 16, Plaintiff called the BeAware hotline regarding his termination. Facts ¶ 72. On August 18, 2005, Plaintiff spoke by telephone with Sherley Montina at RA's Human Resources Department about his termination. Facts ¶ 73. Plaintiff explained the fist fight with Mr. Spangler, and Ms. Montina told Plaintiff that the termination decision would not be reconsidered. Facts ¶ 74. Ms. Montina did not make any discriminatory remarks to Plaintiff during their August 18 telephone conversation. Facts ¶ 75.

In late August 2005, Plaintiff spoke twice by telephone with Robin Cerrati at RA's Human Resources Department about his termination. Facts ¶ 76. During those two telephone calls, Plaintiff explained the fist fight with Mr. Spangler and asked that his termination be reconsidered. Facts ¶ 77. Ms. Cerrati did not make any discriminatory remarks to Plaintiff during their August telephone conversations. Facts ¶ 78. After the two telephone calls with Ms. Cerrati, Plaintiff sent her an email message demanding millions of dollars. Facts ¶ 79. On September 1, 2005, Ms. Cerrati sent Plaintiff a letter confirming his termination for clocking out without permission and fighting with a coworker. Facts ¶ 80.

In September 2005, Plaintiff spoke twice by telephone with Joe Machicote, Compass Ombudsman, about his termination. Facts ¶ 81. During those two telephone calls, Plaintiff explained the fist fight with Mr. Spangler and asked that his termination be reconsidered. Facts ¶ 82. Mr. Machicote told Plaintiff that his termination would not be reconsidered. Facts ¶ 83. Mr. Machicote did not make any discriminatory remarks to Plaintiff during their September telephone conversations. Facts ¶ 84.

### Plaintiff's Employment During And Since RA

Plaintiff continued to work at Woodley Café for the first two weeks he was employed by RA. Facts ¶ 85. Plaintiff also worked about 10 hours a week at Woodley Café between December 2004 and March 2005. Facts ¶ 86.

Plaintiff worked between 15 and 20 hours a week at The Diner between March 2005 and August 2005. Facts ¶ 87. Plaintiff began working full-time at The Diner within one week of his termination from RA. Facts ¶ 88. Plaintiff was terminated from The Diner in November 2005 because he had an altercation with his manager. Facts ¶ 89.

Plaintiff worked between 20 and 25 hours a week at Woodley Café between December 2005 and February 2006. Facts ¶ 90. Plaintiff was terminated from Woodley Café in February 2006 because he had an altercation with his manager. Facts ¶ 91.

Plaintiff has not had a job since February 2006. Facts ¶ 92. Plaintiff stopped looking for a job in October 2006. Facts ¶ 93.

## III. ARGUMENT

In evaluating Plaintiff's burden at this stage of the case, the Court applies the standards of Rule 56(c) of the Federal Rules of Civil Procedure. Summary judgment is not a "disfavored procedural shortcut, but rather [is] an integral part of the federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Moreover, "[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The nonmoving party cannot rest on the general allegations of its pleadings, but must come forward with admissible evidence establishing a genuine issue of material fact. Celotex, 477 U.S. at 324. "And when, like here, the plaintiff maintains the ultimate burden of persuasion at trial, the defendant can meet the burden on its motion by simply identifying the absence of evidence supporting the plaintiff's case." Celotex, 477 U.S. at 325.

10

Plaintiff cannot satisfy his burden on the claims contained in his Complaint, and Defendants are entitled to summary judgment.

A.     **Summary Judgment Is Warranted On Plaintiff's Title VII Claims.**

Plaintiff may not bring a claim of discrimination against Defendants pursuant to Title VII because he failed to comply with the administrative prerequisites set forth in the statute. Title VII provides that a civil suit may be brought by an aggrieved individual only after the filing of a charge with the Equal Employment Opportunity Commission ("EEOC"), and the receipt of a right to sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); Marshall v. Federal Express Corp., 130 F.3d 1095, 1098 (D.C. Cir. 1997); Park v. Howard University, 71 F.3d 904, 907 (D.C. Cir. 1995); Kidane v. Northwest Airlines, Inc., 41 F. Supp. 2d 12, 115 (D.D.C. 1999).

Plaintiff's discrimination claims must be dismissed because he did not utilize the requisite administrative processes prior to filing suit against Defendants. Plaintiff conceded in his deposition that he did not file a charge with the EEOC[3] or any government agency against Defendants. Facts ¶ 95. Plaintiff's failure to do so prevents him from bringing a claim pursuant to Title VII against Defendants, and judgment in Defendants' favor is appropriate. Carter v. Washington Post,[4] Civil Action No. 05-1712, 2006 U.S. Dist. LEXIS 29424 *1 (D.D.C. May 15, 2006) (concluding that court had no jurisdiction over employee's discrimination claim where employee had not filed a discrimination charge with the EEOC or the D.C. Office of Human Rights).

---

[3] Plaintiff admitted in his deposition that he was aware of the EEOC as he had contacted it in the past. Facts ¶ 94.

[4] A copy of the decision is attached hereto as Exhibit 1.

**B.**    **Summary Judgment Is Warranted On Plaintiff's Discrimination Claims.**

Where, as here, Plaintiff offers no direct evidence of discrimination, Plaintiff may indirectly prove discrimination under the burden-shifting framework established by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The McDonnell Douglas framework applies regardless of whether Plaintiff is pursuing his discrimination claims under Title VII,[5] 42 U.S.C. § 1981, or the District of Columbia Human Rights Act. Brown v. Small, 437 F. Supp. 2d 125, 130 (D.D.C. 2006) (District of Columbia Human Rights Act claims are analyzed using the McDonnell Douglas framework); Lemmons v. Georgetown University Hospital, 431 F. Supp. 2d 76, 86 (D.D.C. 2006) (Section 1981 claims are analyzed using the McDonnell Douglas framework).

Under the McDonnell Douglas framework, Plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If Plaintiff can establish a prima facie case, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the adverse action. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Stella v. Mineta, 284 F.3d 135, 144 (D.C. Cir. 2002). If Defendants present a legitimate, nondiscriminatory reason for the challenged employment decision, then the presumptions of the McDonnell Douglas framework disappear and the sole remaining issue is discrimination vel non. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142-43 (2000). The burden then shifts to Plaintiff to show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason. See Aka v. Washington Hospital Center, 156 F. 3d 1284, 1290 (D.C. Cir. 1998).

---

[5] However, as discussed above in Section III.A., Plaintiff cannot bring his promotion and

If Plaintiff cannot produce evidence that would allow a reasonable trier of fact to conclude that Defendants' proffered reason was pretextual, summary judgment must be entered for Defendants. <u>Paquin v. Fannie Mae</u>, 119 F.3d 23, 28-29 (D.C. Cir. 1997). This is such a case.

1.    **Summary Judgment Is Warranted On Plaintiff's Discriminatory Failure To Promote Claim.**

a.    **Plaintiff Cannot Establish A <u>Prima Facie</u> Case Of Discriminatory Denial Of Promotion.**

In order to establish a <u>prima facie</u> case of discriminatory failure to promote, Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for and applied for a promotion; (3) he was considered for and denied the promotion; and (4) after his rejection, Defendants continued to seek applications from individuals who were no more qualified than Plaintiff or awarded the position to such a person. <u>Brown</u>, 437 F. Supp. 2d at 130; <u>Powell v. Washington Metropolitan Area Transit Authority</u>, 238 F. Supp. 2d 160, 164-65 (D.D.C. 2002). In this case, Plaintiff cannot sustain his burden on the second, third, or fourth prongs of the <u>prima facie</u> case.

First, Plaintiff cannot show that he was qualified for the cook positions awarded to Derek Pipher and Janette O'Sullivan in March 2005. Nor can he show that he applied for those positions. The cook positions awarded to Mr. Pipher and Ms. O'Sullivan required a minimum of: (1) one year cooking experience in a high volume kitchen; (2) ability to use knife and demonstrate basic knife skills; (3) ability to work independently with speed and accuracy; and (4) ability to read and understand basic menu techniques. Facts ¶ 25. However, Plaintiff admittedly had less than one year of experience as a cook in March 2005. Facts ¶¶ 1, 2, 8, 85, 86. It cannot be disputed that Plaintiff did not meet the minimum qualifications for the cook

---

termination claims under Title VII because he failed to exhaust his administrative remedies.

positions awarded to Mr. Pipher and Ms. O'Sullivan. Facts ¶ 26. In addition, Plaintiff conceded

in his deposition that he did nothing to apply for those cook positions.

> Q: When you found out that cooks were being hired at the museum, what, if anything, did you do to apply for that position?
>
> A: I didn't. I was just asking for my training, and I was under the impression that when I would – I would be given that position whenever it's convenient, when it's fit, when my supervisors saw it right or proper.
>
> Q: So you didn't actually ever do anything to apply for a cook position.
>
> A: I did not separately fill out a cook's position, no.

Plaintiff's Depo. pp. 124-25.[6] Plaintiff simply cannot satisfy the second prong of the prima facie

case. Facts ¶¶ 1, 2, 8, 19, 85, 86; Lathram v. Snow, 336 F.3d 1085, 1089 (D.C. Cir. 2003)

(applying for position is threshold requirement for prima facie case of discriminatory denial of

promotion claim); Carroll v. England, 321 F. Supp 2d 58, 67 (D.D.C. 2004) (same); Brady v.

Livingood,[7] Civ. Action No. 02-802, 2006 U.S. Dist. LEXIS 71044 *22 (D.D.C. Sept. 28, 2006)

(granting summary judgment to employer on employee's discriminatory denial of promotion

claim because employee was not qualified for promotion).

Second, Plaintiff cannot show that he was considered for and denied a cook position. In

fact, according to Richard Hetzler, RA's Chef at the Mitsitam Café, Plaintiff was never

considered for either of the cook positions for which Mr. Pipher and Ms. O'Sullivan were hired.

Facts ¶ 26. As a logical mater, there would be no reason for RA to consider Plaintiff for either

cook position as he was neither qualified nor applied. Plaintiff cannot satisfy the third prong of

---

[6] The transcript of Plaintiff's deposition is attached as Exhibit A to Defendants' Statement of Undisputed Material Facts.

[7] A copy of the decision is attached hereto as Exhibit 2.

the prima facie case.

Finally, Plaintiff cannot show either that RA sought applications from individuals who were no more qualified than Plaintiff or awarded the position to such a person. The record evidence shows that RA sought applications from individuals who were more qualified than Plaintiff. Specifically, RA sought applications from individuals who had a minimum of : (1) one year cooking experience in a high volume kitchen; (2) ability to use knife and demonstrate basic knife skills; (3) ability to work independently with speed and accuracy; and (4) ability to read and understand basic menu techniques. Facts ¶ 25. Plaintiff admittedly did not have such qualifications. Facts ¶¶ 1, 2, 8, 85, 86. Likewise, RA did not award either cook position to an individual who was no more qualified than Plaintiff. As discussed above, Plaintiff had less than one year of experience as a cook in March 2005. Facts ¶¶ 1, 2, 8, 85, 86. In contrast, Mr. Pipher had more than 15 years experience in the food industry, and had worked as a chef or a cook at four restaurants over the course of eight years. Facts ¶ 22. Similarly, Ms. O'Sullivan had worked as a chef at five restaurants over the course of more than six years, and had graduated from culinary school. Facts ¶ 24. Because Plaintiff cannot show that RA sought applications from individuals with qualifications less than or the same as his or that RA awarded the cook positions to such individuals,[8] he cannot prove the fourth prong of the prima facie case. See Brady, 2006 U.S. Dist. LEXIS 71044 at *22 n.8 (granting summary judgment to employer on employee's discriminatory denial of promotion claim because individuals who obtained positions were more qualified than employee.)

---

[8] Plaintiff admitted in his deposition that he did not know Mr. Pipher's or Ms. O'Sullivan's qualifications. Facts ¶¶ 21, 23.

**b.    RA Had Legitimate, Nondiscriminatory Reasons For Not Promoting Plaintiff.**

Assuming arguendo that Plaintiff could show that he was qualified for and applied for a cook position, was considered for and denied a cook position, and that RA hired individuals who were no more qualified than him, RA had legitimate, nondiscriminatory reasons for not promoting Plaintiff. Both Mr. Pipher and Ms. O'Sullivan were indisputably more qualified for the cook positions than Plaintiff. Specifically, at the time RA hired Mr. Pipher and Ms. O'Sullivan, Plaintiff had less than one year of experience as a cook. Facts ¶¶ 1, 2, 8, 85, 86. On the other hand, Mr. Pipher had more than 15 years experience in the food industry, and had worked as a chef or a cook at four restaurants over the course of eight years. Facts ¶ 22. Likewise, Ms. O'Sullivan had worked as a chef at five restaurants over the course of more than six years, and had graduated from culinary school. Facts ¶ 24. Defendants have met their burden of articulating a legitimate, nondiscriminatory reason for not promoting Plaintiff. Pyne v. District of Columbia,[9] Civil Case No. 01-275, 2006 U.S. Dist. LEXIS 14343 *11 (D.D.C. Mar. 15, 2006) (superior qualifications of other applicants are legitimate, nondiscriminatory reasons for not promoting plaintiff).

**c.    Plaintiff Cannot Show That RA's Legitimate, Nondiscriminatory Reasons For Not Promoting Him Are Pretextual.**

Because Defendants articulated legitimate, nondiscriminatory reasons for not promoting him, Plaintiff must proffer evidence showing that a reasonable trier of fact could conclude that Defendants' reasons are merely a pretext for discrimination. Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151 (D.C. Cir. 2004). Plaintiff cannot do so.

---

[9] A copy of the decision is attached hereto as Exhibit 3.

In this case, the decisions to hire Mr. Pipher and Ms. O'Sullivan as cooks – and not to promote Plaintiff - were made by RA's Chef at the Mitsitam Café, Richard Hetzler.[10]  Facts ¶ 27. Plaintiff admitted in his deposition that Mr. Hetzler never made any discriminatory comments during his employment at RA.  Facts ¶ 71.  In addition, while he was employed by RA, Plaintiff never complained to anyone at RA about Mr. Pipher and Ms. O'Sullivan being hired as cooks or that he thought he did not get a cook position because of discrimination.  Facts ¶¶ 28-29.[11]

Significantly, the decisions to hire Plaintiff as a Line Server and to hire Mr. Pipher and Ms. O'Sullivan as cooks – instead of promoting Plaintiff - were all made by Mr. Hetzler.  Facts ¶¶ 7, 27.  The fact that Mr. Hetzler decided to hire Plaintiff when he applied to work at RA strongly undermines any argument that Mr. Hetzler then discriminated against Plaintiff six months later when he decided not to promote him to a cook position.  See Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 12 (D.D.C. 2000) (finding that same decision maker who fired employee also hired her a short time before raised a presumption or inference of nondiscrimination), aff'd 298 F.3d 989 (D.C. Cir. 2002); Evans v. Technologies Applications & Service Co., 80 F.3d 954, 959 (4th Cir. 1996) (affirming summary judgment and noting powerful inference that failure to promote was not motivated by discriminatory animus where same decision maker had hired employee); see also Williams v. Vitro Services Corp., 144 F.3d 1438, 1442 (11th Cir. 1998); Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2nd Cir. 1997); Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996); Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1337 (8th Cir. 1996); Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996); Buhrmaster v. Overnite Transportation Co., 61 F.3d 461, 463 (6th Cir. 1995);

---

[10] Though Plaintiff believes that some unknown person in RA's Human Resources Department made the decision, he is simply mistaken.

[11] Plaintiff was familiar with the Company's Open Door Policy and BeAware hotline.  Facts ¶¶

Rand v. CF Indus., Inc., 42 F.3d 1139, 1147 (7th Cir. 1994); LeBlanc v. Great American Insurance Co., 6 F.3d 836, 847 (1st Cir. 1993).

In sum, Plaintiff cannot establish a prima facie case of discriminatory failure to promote. Assuming that Plaintiff could establish a prima facie case, he has no evidence that Defendants' legitimate, nondiscriminatory reason for not promoting him is a pretext for discrimination. Waterhouse, 124 F. Supp. 2d at 7 (Plaintiff cannot establish pretext simply based on her own perception of her performance because it is the perception of the decision maker which is relevant); Smith v. Chamber of Commerce of the United States, 645 F. Supp. 604, 608 (D.D.C. 1986).

**2.     Summary Judgment Is Warranted On Plaintiff's Discriminatory Termination Claim.**

**a.     Plaintiff Cannot Establish A Prima facie Case Of Discriminatory Termination.**

In order to establish a prima facie case of discriminatory termination, Plaintiff must demonstrate that:   (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. Stella, 284 F.3d at 145; Lemmons, 431 F. Supp. 2d at 87; Fox v. Giaccia, 424 F. Supp. 2d 1, 7 (D.D.C. 2006); Turner v. District of Columbia, 383 F. Supp. 2d 157, 167 (D.D.C. 2005).

In this case, Plaintiff cannot sustain his burden on the third prong of the prima facie case. Plaintiff may establish an inference of discrimination by demonstrating that he was treated differently from similarly situated employees who are not part of his protected class. George v. Leavitt, 407 F.3d 405, 415 (D.C. Cir. 2005); Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999).   To satisfy this burden, Plaintiff must demonstrate that another employee charged with

---

12, 14 ,15.

offenses of comparable seriousness did not suffer a similar adverse action. <u>Holbrook</u>, 196 F.3d at 261; <u>Willingham v. Gonzales</u>, 391 F. Supp. 2d 52, 59 (D.D.C. 2005).

Plaintiff cannot show that he was treated differently from similarly situated employees who are not part of his protected class. Significantly, Plaintiff conceded in his deposition that he knows of no other RA employee who had clocked out without permission and started a fight with a coworker and was not terminated. Facts ¶ 67.

> Q:    Okay. Do you know of any Restaurant Associates employee who has clocked out without permission and started a fight with a coworker and not been terminated?
>
> A:    Who clocked out without permission, started out? No, I don't.

Plaintiff's Depo. p. 239.

Because Plaintiff cannot prove the third prong of the <u>prima facie</u> case, summary judgment should be entered in Defendants' favor on his discriminatory termination claim. <u>Fox</u>, 424 F. Supp. 2d at 7-9; <u>Willingham</u>, 391 F. Supp. 2d at 60.

### b.    RA Had Legitimate, Nondiscriminatory Reasons For Terminating Plaintiff.

Assuming arguendo that Plaintiff could establish a <u>prima facie</u> case of discriminatory termination – which he cannot, RA had legitimate, nondiscriminatory reasons for terminating Plaintiff. Specifically, RA terminated Plaintiff because he clocked out without permission and started a fight with a coworker. Facts ¶ 65. Plaintiff has admitted that both of RA's reasons for terminating him are true. Facts ¶¶ 47, 49, 64.

> Q:    So do you remember, during that meeting with Tara and Derek, admitting that you had clocked out without permission.
>
> A:    Yes, of course. That's what happened. I did clock out without getting permission. This is what I did.
>
> …
> Q:    And you recall admitting that you grabbed Mr. Spangler's arm.

A:    Yes, I did.

Plaintiff's Depo. pp. 196-97.

Defendants have met their burden of articulating legitimate, nondiscriminatory reasons for terminating Plaintiff.  Richard v. Bell Atlantic Corp., 209 F. Supp. 2d 23, 33 (D.D.C. 2002) (job abandonment is legitimate, nondiscriminatory reason for termination); Sullivan v. Boorstin, 484 F. Supp. 836, 843 (D.D.C. 1980) (fighting is legitimate, nondiscriminatory reason for termination).

> c.    **Plaintiff Cannot Show That RA's Legitimate, Nondiscriminatory Reasons For Terminating Him Are Pretextual.**

Because Defendants articulated legitimate, nondiscriminatory reasons for terminating him, Plaintiff must proffer evidence showing that a reasonable trier of fact could conclude that Defendants' reasons are merely a pretext for discrimination.  Teneyck, 365 F.3d at 1151.  Like with his discriminatory denial of promotion claim, Plaintiff has nothing but his own speculation and allegations of discrimination, which are insufficient to show pretext.  Willingham, 391 F. Supp. 2d at 63.

Plaintiff believes that some unknown person in RA's Human Resources Department was responsible for deciding that he should be terminated.  Facts ¶ 68.  However, Plaintiff admits that he has no evidence that anyone in RA's Human Resources Department had knowledge of his national origin or his religion.  Facts ¶ 70.  In addition, Plaintiff concedes that no one made any discriminatory comments at any time during his employment, including during his termination meeting.  Facts ¶¶ 66, 71.  Furthermore, Plaintiff acknowledges that no one at Defendants with whom he spoke following his termination – Sherley Montina, Robin Cerrati, and Joe Machicote – made any discriminatory comments.  Facts ¶¶ 75, 78, 84.  The fact that RA terminated Plaintiff

for clocking out without permission and starting a fight with a coworker – and not due to discriminatory animus – is further bolstered by the fact that Plaintiff has been terminated for fighting from both jobs he has had since RA. Facts ¶¶ 89, 91.

In sum, Plaintiff cannot establish a <u>prima facie</u> case of discriminatory termination. Assuming that Plaintiff could establish a <u>prima facie</u> case, he has no evidence that Defendants' legitimate, nondiscriminatory reasons for terminating him are a pretext for discrimination.

### C.    <u>Summary Judgment Is Warranted On Plaintiff's Intentional Infliction Of Emotional Distress Claim.</u>

To prove his emotional distress claim, Plaintiff must establish that:  (1) Defendants' conduct was extreme and outrageous; (2) the emotional distress he suffered was severe; and (3) Defendants' conduct intentionally or recklessly caused the alleged emotional distress.  <u>Darrow v. Dillingham & Murphy, LLP</u>, 902 A.2d 135, 139 (D.C. 2006); <u>Joyner v. Sibley Memorial Hospital</u>, 826 A.2d 362, 373 (D.C. 2003). However, Plaintiff cannot satisfy his burden on the first and third elements of this claim.

#### 1.    Defendants' Conduct Was Not Extreme And Outrageous.

To constitute extreme and outrageous conduct, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." <u>McManus v. MCI Communications Corp.</u>, 748 A.2d 949, 958 (D.C. 2000) (affirming grant of summary judgment to employer where employee alleged that employer made racist comments about her hair and clothes and discriminated against her based upon race and personal appearance).

District of Columbia courts are demanding in the proof required to support an intentional infliction of emotional distress claim in the employment context.  <u>Kerrigan v. Britches of Georgetowne, Inc.</u>, 705 A.2d 624, 628(D.C. 1997).  In this case, Plaintiff has alleged that he was

denied a promotion and terminated because of discrimination. This alleged conduct – even if true – does not constitute extreme and outrageous conduct as is required to maintain an intentional infliction of emotional distress claim. See, e.g., Hoffman v. Hill & Knowlton, Inc., 777 F. Supp. 1003, 1005 (D.D.C. 1991) (interfering with employee's ability to do job, stating false reasons for discharging employee with knowledge that reasons would be publicized, and discharging employee are not actionable); Kerrigan, 705 A.2d at 628 (targeting employee for sexual harassment investigation, manufacturing evidence against employee in investigation, leaking information from investigation to other employees, and unjustifiably demoting employee are not actionable); Crowley v. North American Telecommunications Association, 691 A.2d 1169, 1172 (D.C. 1997) (allegations of being subjected to contempt, scorn, and other indignities and unwarranted evaluation and discharge are not actionable); King v. Kidd, 640 A.2d 656, 670-74 (D.C. 1993) (repeatedly failing to respond to employee's sexual harassment complaints is not actionable); Smith v. Union Labor Life Insurance Co., 620 A.2d 265, 270 (D.C. 1993) (dismissal without prior disciplinary procedures is not actionable); Adams v. George W. Cochran & Co., 597 A.2d 28, 30 (D.C. 1991) (terminating employee for refusing to disobey law by driving truck without proper inspection sticker is not actionable); District of Columbia v. Thompson, 570 A.2d 277, 290 (D.C. 1990) (pattern of criticism and misrepresentation coupled with alleged assault and subsequent termination is not actionable).

Notably, District of Columbia courts have held that mere discharge of an employee is not conduct sufficiently outrageous and extreme to support a claim for intentional infliction of emotional distress. Crowley, 691 A.2d at 1172; Elliott v. Healthcare Corp., 629 A.2d 6, 9 (D.C. 1993) (quoting Schoen v. Consumers United Group, Inc., 670 F. Supp. 367 (D.D.C. 1986)).

Plaintiff cannot show that Defendants' conduct – not promoting him to a job for which he was not qualified and terminating him for admittedly clocking out without permission and starting a fight with a coworker - was extreme and outrageous.

### 2.    Defendants' Conduct Was Not Intentional Or Reckless.

Assuming that Defendants' conduct was extreme and outrageous, Plaintiff cannot show that Defendants' conduct was intentional or reckless.

In Stanford v. Potomac Electric Power Co., 394 F. Supp. 2d 81, 91 (D.D.C. 2005), this Court held that the employer's alleged conduct was neither intentional nor reckless. The employee in Stanford alleged that his employer required him to enter a manhole without proper training or protective gear. Id. The Court ruled that, because the employee had a choice not to enter the manhole, intentionality and recklessness could not be imputed to the employer. Id. In reaching its ruling, the Court noted that, while the employee's choice and its consequences may have been onerous to the employee at the time, the employer did not force him to do anything. Id. See also Duncan v. Children's National Medical Center, 702 A.2d 207, 211-12 (D.C. 1997) (employee failed to show intentional conduct on part of employer because she had a choice, albeit an unappealing one, about whether to work for employer).

Like the plaintiffs in Stanford and Duncan, Plaintiff was not forced by Defendants to do anything. In the absence of any evidence that Defendants required Plaintiff to do something and that Plaintiff had no choice but to do what Defendants required, intentionality and recklessness cannot be imputed to Defendants.

Summary judgment should be entered on Plaintiff's intentional infliction of emotional distress claim because he cannot show that Defendants' conduct either was extreme and outrageous or intentionally or recklessly caused his alleged emotional distress.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants Compass Group USA, Inc. and Restaurant Associates, Inc. respectfully request that the Court grant their Motion for Summary Judgment.

Dated:  December 20, 2006                      Respectfully submitted,

                                               LITTLER MENDELSON, P.C.

                              By:   <u>/s/ Katherine A. Goetzl</u>
                                    Paul J. Kennedy (D.C. Bar No. 428623)
                                    Katherine A. Goetzl (D.C. Bar No. 457660)
                                    1150 17th Street N.W., Suite 900
                                    Washington, DC  20036
                                    202.842.3400  telephone
                                    202.842.0011  facsimile

                                    Counsel for Defendant Compass Group USA, Inc.
                                    and Defendant Restaurant Associates, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that, on December 20, 2006, a copy of the foregoing Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment was served by first class mail, postage prepaid, upon the following:

Rami Elhusseini
2517 Mozart Place, NW
Apt. 103
Washington, DC 20009

Plaintiff pro se

/s/ Katherine A. Goetzl
Katherine A. Goetzl

Firmwide:81724358.1 024778.1145

25