# EXHIBIT 2

LEXSEE 2006 U.S. DIST. LEXIS 71044


Caution
As of: Dec 18, 2006

Standley Brady, Plaintiff, v. Wilson Livingood, et al. Defendants.

Civ. Action No. 02-802 (RJL)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*2006 U.S. Dist. LEXIS 71044*

September 28, 2006, Decided
September 28, 2006, Filed

**SUBSEQUENT HISTORY:** Amended by *Brady v. Livingood, 2006 U.S. Dist. LEXIS 74800 (D.D.C., Sept. 28, 2006)*

**PRIOR HISTORY:** *Brady v. Livingood, 360 F. Supp. 2d 94, 2004 U.S. Dist. LEXIS 27081 (D.D.C., 2004)*

**COUNSEL:** [*1] For STANDLEY BRADY, Plaintiff: Joseph D. Gebhardt, Valencia R. Rainey, Charles W. Day, Jr., GEBHARDT & ASSOCIATES, LLP, Washington, DC.

For WILSON LIVINGOOD, Sergeant at Arms, United States House of Representatives, Defendant: Gloria Lett, Victoria L. Botvin, U.S. HOUSE OF REPRESENTATIVES, Office of House Employment Counsel, Washington, DC; Kerry W. Kircher, OFFICE OF GENERAL COUNSEL, U.S. HOUSE OF REPRESENTATIVES, Washington, DC.

For OFFICE OF THE SERGEANT AT ARMS, Defendant: Victoria L. Botvin, U.S. HOUSE OF REPRESENTATIVES, Office of House Employment Counsel, Washington, DC.

For UNITED STATES OF AMERICA, Defendant: Edith M. Shine, U.S. ATTORNEY'S OFFICE, Washington, DC.

For DONALD T. KELLEHER, KERRI LYNN HANLEY, JEANNE M. MERSHON, PATRICK T. LANIGAN, BARBARA J. SULLIVAN, ANTHONY W. GRIFFITH, Defendants: Kerry W. Kircher, OFFICE OF GENERAL COUNSEL, U.S. HOUSE OF REPRESENTATIVES, Washington, DC.

**JUDGES:** RICHARD J. LEON, United States District Judge.

**OPINION BY:** RICHARD J. LEON

**OPINION:**

**MEMORANDUM OPINION**

(September 2 2006) [# 60]

Plaintiff, Standley Brady ("Brady"), brings this action against defendant, the Office of the Sergeant at Arms of the U.S. House of Representatives [*2] ("Office of the Sergeant at Arms"), alleging employment discrimination and creation of a hostile work environment in violation of the Congressional Accountability Act, *2 U.S.C. § 1301 et seq.* n1 Now before the Court is defendant's Motion for Summary Judgment on all live counts of plaintiff's Amended Complaint. For the following reasons, the Court GRANTS defendant's Motion.

n1 Plaintiff originally filed suit against the Office of the Sergeant at Arms, the United States, Wilson Livingood, Donald T. Kellaher, Kerri Lynn Hanley, Jeanne M. Mershon, Patrick T. Lanigan, Barbara J. Sullivan, and Anthony W. Griffith, bringing claims of unlawful employment discrimination based on race, retaliation, and hostile work environment against the Office of the Sergeant at Arms, intentional infliction of emotional distress against the United States, and civil

Case 1:06-cv-00100-RBW   Document 20-3   Filed 12/20/2006   Page 3 of 9

Page 2
2006 U.S. Dist. LEXIS 71044, *

conspiracy against the seven individual defendants. On March 28, 2003, plaintiff voluntarily dismissed his claim against the United States *(see* Notice of Dismissal, Dkt. # 29), and on March 24, 2004, this Court dismissed the Counts charging race discrimination/disparate impact, retaliation, and civil conspiracy. *See generally Brady v. Livingood, 360 F. Supp. 2d 94 (D.D.C. 2004).*

[*3]

**BACKGROUND** n2

n2 The "Background" section of this Memorandum Opinion is adapted from this Court's March 24, 2004 Memorandum Opinion granting defendants' Motions to Dismiss plaintiff's claims of race discrimination/disparate impact, retaliation, intentional infliction of emotional distress, and civil conspiracy. *See Brady, 360 F. Supp. 2d at 97-98.* For the purposes of this Opinion, because immaterial to the Court's ruling on the law, the Court assumes the truth of all factual allegations in plaintiff's Amended Complaint.

Brady is an African-American male (Am. Compl. P7) who has been employed by the U.S. House of Representatives Office of Garages and Parking Security Department ("OG&PS") as a Garage and Parking Security Officer since 1982 *(id.* P12). Initially he was employed with the Office of the Architect of the Capitol, and subsequently with defendant Office of the Sergeant at Arms. *(Id.* P12.) Brady believes that he has maintained an excellent work record during his more than [*4] twenty years of employment with OG&PS *(id.* P2, 14), notwithstanding his claim that he "has been the target of ongoing discriminatory practices based upon[, *inter alia,* his] race" *(id.* P34). Indeed, Brady alleges that he has never received a permanent promotion or more an one pay bonus, while "white employees have advanced and receive annual pay bonuses at a higher rate than [p]laintiff and other African-Americans." *(Id.* P41.) Moreover, he further alleges that "[he] and other tenured, experienced, educated African-America is have been continually discriminated against and unable to advance to the OG&P department managerial level." *(Id.* P42.)

By way of example, plaintiff alleges that, on or about April 9, 2001, after returning from vacation in South Africa three days prior to the completion of his one-year probationary period as an Assistant Shift Supervisor, he learned that his African-American supervisor had been forced to resign as a result of allegations of misconduct by two Caucasian employees, Barbara J. Sullivan and Anthony W. Griffith. (Am. Compl. P21-22.) Moreover, on the same day, plaintiff claims that he was inform by Jeanne Mershon, Deputy Director, [*5] and Don Kellaher, Assistant to the Sergeant at Arms, that he would not be promoted to succeed his supervisor even though he was next in line for the position. *(Id.* P23.) Brady claims that they preferred Bill Lomax, a Caucasian male with "less than nine months on the job" *(id.* P24), over plaintiff because, as Mershon allegedly stated, she felt more comfortable working with Lomax than with plaintiff *(id.* P23).

Brady further claims that the new Acting Supervisor, Bill Lomax, approached him the next day n3 and spoke to him "in a very degrading and condescending fashion as if [plaintiff] were a slave-servant to Mr. Lomax." (Am. Compl. P25.) Plaintiff was summoned later that day to the office of Deputy Director Mershon, and then to the office of Wilson Livingood, Sergeant at Arms. *(Id.)* According to Brady, Deputy Sergeant at Arms Kerri Hanley and Don Kellaher told him that the Sergeant at Arms had lost confidence in his ability to supervise and that, as a result, plaintiff would not be remaining in his active position permanently, but would be returned to his lower grade classification. *(Id.* P25.) Indeed, Hanley allegedly told plaintiff that there had been investigations [*6] of plaintiff's conduct based on complaints from a private for group of employees that indicated that plaintiff was not an effective supervisor. *(Id.* P26.)

n3 Although plaintiff's Amended Complaint P25 states that this occurred on "April 10, 2002," the context of the paragraph makes clear that plaintiff intended the date to be "April 10, 2001" and that "April 10, 2002" is a typographical error.

In addition, plaintiff alleges that he was further informed that there was "clear and convincing evidence" that he had sexually harassed two white employees. n4 (Am. Compl. P26.) Plaintiff believes that the two employees who accused him also mad allegations against the plaintiff's former supervisor, William Morris *(id.* P28), and denies that the sexual harassment took place. *(Id.* P30.) Moreover, he claims that even though he asked for a copy of any evidence against him, his supervisors, Hanley and Kellaher, denied the request *(id.* P26) and subsequently indicated that his failure to make a full statement [*7] of his innocence to his immediate supervisors, coupled with his vacation to South Africa, which gave them the impression that he was running away from his guilt, convinced them that plaintiff must have committed the offense n5 *(id.* P29). Plaintiff contends that his demotion resulted in a substantial loss of income, embarrassment, and a loss of reputation. *(Id.* P31.)

n4 Plaintiff is alleged to have approached an African-American female employee and asked her, "May I please use your restroom?" while grabbing his pants in the genital area. (Am. Compl. P29.)

n5 The Office of the Sergeant at Arms subsequently conducted an internal investigation of the alleged incident (Def.'s Mot. for Summ. J. at 7), ultimately concluding that "what [Sullivan and Griffith] saw was credible ... and that Brady might have been joking ... [but] even in a joking manner, it offended two of his employees, and [Brady] was the supervisor" (id. at 8 (citing Livingood Dep. (attached to Def.'s Mot. Summ. J. as Ex. 1) at 55-56 (alterations in original)). The Office subsequently commissioned the Relman & Associates law firm to conduct an independent investigation into the matter. (Def.'s Mot. for Summ. J. at 9.) Consistent with the findings of the internal investigation, Relman & Associates concluded, inter alia, that "[i]t is likely that an incident occurred that was most accurately described by Sullivan and Griffith" (Relman Report. at 13 (attached to Def.'s Mot. for Summ. J. as Ex. 15).)

[*8]

ANALYSIS

I. Standard of Review

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Under Rule 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Where the court finds that facts material to the outcome of the case are at issue, a case may not be disposed of by summary judgment. Id. at 248. If the facts in dispute are "merely colorable, or . . . not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Though the moving party bears the burden [*9] of establishing that there are no genuine issues of material fact and at judgment on the legal issues is appropriate in its favor, Celotex, 477 U.S. at 322-24, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e). "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson, 477 U.S. at 251. If there is insufficient evidence indicating that a jury could return a favorable verdict for the nonmoving party, then summary judgment is proper. Id. at 252.

II. The Congressional Accountability Act of 1995

The Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301 et seq., makes several anti-discrimination laws, such as Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., applicable to the legislative branch of the federal government. 2 U.S.C. § 1302. [*10] Under the statutory framework of the CAA, federal courts only have jurisdiction over civil actions brought by a covered employee if that employee has completed mediation and counseling requirements under the statute. 2 U.S.C. §§ 1404, 1408. The covered employee must commence an action under the CAA by requesting, counseling not later than 180 days after the alleged discriminatory action, 2 U.S.C. § 1402(a), and once the 30-day counseling period ends, the employee can then file a request for mediation with the Office of Compliance, 2 U.S.C. § 1403(a). civil action may be commenced only to seek redress for a violation for which the employee has completed both counseling and mediation. 2 U.S.C. § 1408(a).

In the instant case, it is undisputed that plaintiff first sought counseling for defendant's allegedly discriminatory acts on October 5, 2001. Brady, 360 F Supp. 2d at 102 n.5. Accordingly, this Court has held that any claims in the Amended Complaint, with the exception of the hostile work environment claim, that are base on conduct occurring prior to April 8, 2001, [*11] i.e., 180 days prior to the date plaintiff sought counseling as required by the CAA, are time-barred and will not be considered by the Court. See id. at 102. Plaintiff has identified three discrete acts of alleged discrimination between April 8, 2001 and his October 5, 2001 request for counseling: (1) plaintiff's April 10, 2001 demotion (Am. Compl. P54); (2) the April 2001 appointment of Bill Lomax as Shift Supervisor (id. P55); and (3) the June 2001 appointment of Bob Tolbert as Evening Shift Supervisor (id. P56). n6 This Court will therefore consider only these alleged acts of discrimination when reviewing plaintiff's claim of impermissible employment discrimination based on race.

n6 In its Motion for Summary Judgment, defendant addresses a fourth discrete act: what it refers to as "the July 2001 appointment of Rod Myers as Director." (Def.'s Mot. Summ. J. at 13; *see also id.* 25-27.) The Court does not address this act because it was not properly pled--or even mentioned--in plaintiff's Amended Complaint. It should be noted that plaintiff has been represented by counsel throughout these proceedings.

[*12]

### III. *Race Discrimination Disparate Treatment*

#### A. *Title VII of the Civil Rights Act of 1964*

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer to, *inter alia,* "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." n7 *42 U.S.C. § 2000e-2(a)(1).* "The emphasis of both the language and the legislative history of the statute is on eliminating discrimination in employment; similarly situated employees are not to be treated differently solely because they differ with respect to race; color, sex, or national origin" *Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 71, 97 S. Ct. 2264, 53 L. Ed. 2d 113 (1977).*

n7 Title VII also makes it unlawful for an employer to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status an employee, because of such individual's race, color, religion, sex, or national origin." *42 U.S.C. § 2000e-2(a)(2).*

[*13]

In racial discrimination suits under to Title VII, "the plaintiff may prove his claim with direct evidence, and absent direct evidence, he may indirectly prove discrimination by establishing a prima facie case under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)]." Kalekiristos v. CTS Hotel Mgmt. Corp., 958 F. Supp. 641, 665 (D.D.C. 1997).*

#### 1. *Direct Evidence*

A plaintiff may prove a claim of unlawful racial discrimination with direct evidence of discrimination. *Id.* While courts have not precisely defined whit constitutes "direct evidence," it is clear that "at a minimum, direct evidence does not elude stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself." *Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996)* (citing, *inter alia, Price Waterhouse v. Hopkins, 490 U.S. 228, 251-52, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)* (plurality op.); *id. at 277-78* (O'Connor, J., concurring)). Though possibly [*14] probative of discrimination, "stray remarks do not satisfy a plaintiff's burden of proving discrimination by direct evidence." *Id.* (citing *Price Waterhouse, 490 U.S. at 277* (O'Connor, J., concurring)).

In the instant case, plaintiff has failed to allege any direct evidence, of racial discrimination. Though plaintiff alleges that "[s]hortly after [his] demotion, [a particular] white employee ... created an incident at the garage when he referred to [an] African American employee ... as a 'nigger,'" (Pl.'s Mem. in Opp'n to Def.'s Mot. Summ. J. (Pl.'s Opp'n") at. 4), such a stray remark, albeit derogatory, is insufficient to constitute "direct evidence" as required by law for Title VII claims. Moreover, the alleged comment, according to Brady, was not made to him, but to another employee. (Brady Dep. (attached to Pl.'s Opp'n as Ex. 2) at 282.) Though plaintiff suggests that various employees insulted him on numerous occasions, "[v]ague, conclusory statements are not sufficient to create a genuine issue of material fact." *Kalekiristos, 958 F. Supp. at 665* (citing *McDonald v. Union Camp. Corp., 898 F.2d 1155, 1162 (6th Cir. 1990); Gagne v. Nw. Nat'l Ins. Co., 881 F.2d 309, 314 (6th Cir. 1989)* [*15] ("isolated an ambiguous statements" insufficient to create a genuine issue of material fact)). Thus, plaintiff cannot prove discrimination by direct evidence.

#### 2. *Indirect Evidence-The* McDonnell Douglas *Framework*

Where, as here, plaintiff offers no direct evidence of discrimination, plaintiff may indirectly prove discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).* Under this framework, a plaintiff-employee carries the initial burden of production and must establish a prima facie case of discrimination. *Id.* If a plaintiff-employee does so, the burden then shifts to the defendant-employer, who "must then articulate a legitimate, nondiscriminatory reason for its actions." *Stella v. Mineta, 350 U.S. App. D.C. 300, 284 F.3d 135, 144 (D.C. Cir. 2002)* (citing *McDonnell Douglas, 411 U.S. at 802).* If the defendant-employer

successfully provides a valid reason, the burden shifts back to the plaintiff-employee, who "must then demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory. [*16] " *Id.* (citing *McDonnell Douglas at 804*).

To establish a generic prima facie case of unlawful discrimination, plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Stella, 284 F.3d at 145*. Importantly, the Supreme Court has specifically noted that the requisite prima facie proof will vary from one case to another, and the standard is meant to be flexible. *McDonnell Douglas, 411 U.S. at 802 n.3*; *Bhatia v. AT&T, Inc., 310 F. Supp. 2d 29, 31-32 (D.D.C. 2004)*. If a plaintiff fails to establish any element of the prima facie case by a preponderance of the evidence, then his claim must necessarily fail and defendant is entitled to judgment as a matter of law. *See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)*; *Morgan v. Fed. Home Loan Mortgage Corp., 356 U.S. App. D.C. 109, 328 F.3d 647, 650 (D.C. Cir. 2003)*.

### a. Plaintiffs "Demotion "from Assistant Shift Supervisor

To establish a prima facie case of discriminatory [*17] application of discipline, "plaintiff must demonstrate that (1) he is a member of a protected class; (2) he was similarly situated to an employee who was not a member of the protected class; and (3) he was treated differently from the similarly situated employee." *Hanna v. Herman, 121 F. Supp. 2d 113, 117-18 (D.D.C. 2000)* (citing *Holbrook v. Reno, 339 U.S. App. D.C. 4, 196 F.3d 255, 261 (D.C. Cir. 1999)*). It is not contested that plaintiff, an African-American, is a member of a protected class. For plaintiff to prove that he is similarly situated to a non-African-American employee, he must demonstrate that both he and the non-African-American employee were charged with offenses of "comparable seriousness." *See Holbrook, 196 F.3d at 261* (same standard applied to sex discrimination claims under Title VII). Plaintiff must further demonstrate that "'all of the relevant aspects of [his] employment situation were 'nearly identical' to those of the [non-African-American]'" employee. *Id.* (quoting *Neuren v. Adduci, Mastriani, Meeks & Schill, 310 U.S. App. D.C. 82, 43 F.3d 1507, 1514 (D.C. Cir. 1995)* (sex discrimination). [*18]

In the instant case, plaintiff was demoted from his Assistant Shift Supervisor position after allegations of sexual harassment were made against him and a Office of the Sergeant at Arms concluded that the allegations were meritorious. In is Amended Complaint and subsequent pleadings, plaintiff fails to identify a similarly-situated non-African-American employee charged with an offense of "comparable seriousness" as required to establish his prima facie case of discrimination, and further plaintiff cannot claim he was treated differently than such an individual. As defendant correctly notes in its Motion, at the time of plaintiff's demotion, "the universe of similarly-situated employees was limited to only supervisors with similar responsibilities who were still within their one-year probationary period." (Def.'s Mot. Summ. J. at 16-17 (citing, inter alia, *Holbrook, 196 F.3d at 262* (finding probationary trainee and fifteen-year veteran with supervisory responsibilities not similarly situated despite being charge with similar offenses); *Barbour v. Browner, 337 U.S. App. D.C. 50, 181 F.3d 1342, 1345 (D.C. Cir. 1999)* (employee with specific, limited task management [*19] responsibilities not similarly situated to employee with more numerous and weighty responsibilities); *McKenna v. Weinberger, 234 U.S. App. D.C. 297, 729 F.2d 783, 789-90 (D.C. Cir. 1984)* (probationary employee not similarly situated to permanent employee); *Rhodes v. Chertoff, 2005 U.S. Dist. LEXIS 36121, No. Civ.A. 04-1715 RMC, 2005 WL 3273566, at *6 (D.D.C. Aug. 4, 2005)* (same)).) Thus, for the purposes of plaintiff's action, the only employee similarly situated to him was Bill Lomax, who was eight months into his Assistant Shift Supervisor probationary period, and had not been charged with a similar offense. Thus, plaintiff cannot establish a prima facie case of discrimination relating to his demotion from the position of Assistant Shift Supervisor.

### b. Plaintiffs Non-Selection for Promotions

To establish a prima facie case of discrimination based on failure to promote, plaintiff must demonstrate that

> (1) [he], is a member of a protected class; (2) []he was qualified for and applied for a promotion; (3) []he was considered for and denied the promotion; and (4) after [his] rejection, the employer continued to seek applications from individuals who were no more qualified than plaintiff [*20] or awarded the position to such a person.

*Powell v. Wash. Metro. Area Transit Auth., 238 F. Supp. 2d 160, 164-65 (D.D.C. 2002)* (citing *McDonnell Douglas, 411 U.S. at 802*; *Forman v. Small, 350 U.S. App. D.C. 24, 271 F.3d 285, 292 (D.C. Cir. 2001)* (applying this standard to age discrimination claim)). Importantly, the Supreme Court has recognized that

> [a]n employer's isolated decision to reject an applicant who belongs to a racial minority does not show that the rejection was racially based. Although the *McDonnell Douglas* formula does not require direct proof of discrimination, it does demand that the alleged discriminatee demons rate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977).

Plaintiff alleges two discrete instances of unlawful racial discrimination based on failure to promote that are not time-barred [*21] by the CAA: defendant's appointment of Bill Lomax as Shift Supervisor and Bob Tolbert as Evening Shift Supervisor. *(See* Am. Compl. PP55-56.) In each instance, plaintiff applied for the position, but was ultimately not selected, allegedly because of his race. Plaintiff's claims of discrimination based on failure to promote fail, however, because plaintiff cannot establish all elements of a prima facie case of discrimination as required by law. Though it is undisputed that plaintiff is a member of a protected class and that he was considered for and denied the promotions that were ultimately awarded to Lomax, and Tolbert, plaintiff fails to establish the second and fourth elements of his prima facie case.

With respect to plaintiffs non-selection for promotion to Shift Supervisor and/or Evening Shift Supervisor, plaintiff cannot establish a prima facie case of discrimination because plaintiff cannot show that he was qualified for the promotion. As stated in the vacancy announcements, qualifications for the positions of Shift Supervisor and Evening Shift Supervisor included, *inter alia*, a "minimum of three years management experience with a government or private organization [*22] preferred. Must possess strong leadership and organizational skills. Must possess excellent communication skills[.]" (Vacancy Announcements HSAA-30-01-04 & 30-01-05 (attached to Def.'s Mot. Summ. J. as Ex. 21, Attachs. C, D).) Plaintiff does not possess the preferred three years of management experience. Moreover, the complaints received about plaintiff's performance during his one-year probationary period as Assistant Shift Supervisor further indicate his lack of qualification for the positions. n8 For the above reasons, defendant's Motion to Dismiss plaintiffs claims of unlawful racial discrimination-- disparate treatment mus be granted. n9

n8 Assuming, *arguendo,* that plaintiff was qualified for the positions of Shift Supervisor and/or Evening Shift Supervisor, the persons chosen for the positions, Bill Lomax and Bob Tolbert, respectively, were *more qualified.* Mr. Lomax had well over fifteen years of management experience *(see* Lomax Resume (attached to Def's Mot. Summ. J. as Ex. 21, Attach. G)), and Mr. Tolbert had approximately eleven years of management experience *(see* Tolbert Resume (attached to Def.'s Mot. Summ. J. as Ex. 21, Attach. H)). Thus, plaintiff cannot satisfy the fourth element of his prima facie case of discrimination based on a failure to promote.

[*23]

n9 Because this Court finds that plaintiff failed to establish a prima face case of discrimination, the burden does not shift to defendant to articulate legitimate, non-discriminatory reasons for its personnel actions as provided by the *McDonnell Douglas* framework. *See McDonnell Douglas, 411 U.S. at 802.* The Court notes, however, that even if plaintiff were able to establish a prima facie case of discrimination, defendant's Motion for Summary Judgment would still be granted because defendant's personnel actions were in fact undertaken for legitimate, non-discriminatory reasons. Plaintiff admits in his Amended Complaint that defendant' superiors told him that they believed there was "clear and convincing evidence" that he had sexually harassed two employees *(see* Am. Compl. P26); this alone would constitute legitimate group for plaintiff's demotion. Moreover, the demotion followed complaints about plaintiffs performance during his probationary period as Assistant Shift Supervisor *(see* Mem. from Kellaher to Livingood & Hanley (Mar. 31, 2001) (attached to Def.'s Mot. Summ. J. as Ex. 13, Attach. A) at 1-3), and ineffectiveness in the position during a probationary period would likewise constitute a legitimate reason for plaintiff to be demoted. Defendant's decisions not to promote plaintiff were similarly based on legitimate grounds, as the complaints about plaintiff's performance as Assistant Shift Supervisor and the superior qualifications of the people ultimately selected for the positions constitute legitimate, non-discriminatory reasons for not promoting plaintiff.

[*24]

IV. Hostile Work Environment

Title VII makes it unlawful for an employer to subject an employe to a racially hostile work environment. *See AMTRAK v. Morgan, 536 U.S. 101, 104, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)*. As with claims of discrete acts of racial discrimination by employers absent direct evidence, hostile work environment claims are analyzed under the *McDonnell Douglas* framework. *See Clipper v. Billington, 414 F. Supp. 2d 16, 24 (D.D.C. 2006)*. Thus, to establish a prima facie case for a hostile work environment based on race, plaintiff must demonstrate that

> (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment occurred because of his race; (4) the harassment affected a term, condition, or privilege of his employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent it.

*Nurriddin v. Goldin; 382 F. Supp. 2d 79, 107 (D.D.C. 1997); accord Jones v. Billington, 12 F. Supp. 2d 1, 11 (D.D.C. 1997)*.

Importantly, a workplace becomes "hostile" for the purposes of Title VII only "[w]hen the [*25] workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)* (quoting *Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1978)*) (internal citations omitted). As Judge Bates of our Court has noted, "the key terms, then, are 'severe"pervasive,' and 'abusive,' as not just any offensive or discriminatory conduct actionable hostile work environment." *Nurriddin, 382 F. Supp. 2d at 107*. To determine whether a workplace is sufficiently hostile to be actionable under Title VII, the Court must "look[] at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and, whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)* (internal quotation marks omitted) (quoting [*26] *Harris, 510 U.S. at 23*) (analyzing sex discrimination claim under Title VII). The Supreme Court has specifically noted that "[t]hese standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code[, and p]roperly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as *[inter alia]* the sporadic use of abusive language." *Id. at 788* (internal quotation marks and citations omitted). Moreover, the Supreme Court has held that "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* Discrete acts of discrimination, however, are time-barred and therefore not actionable if they occurred more than 180 days prior to the date on which plaintiff sought counseling as required by the CAA. *See Brady, 360 F. Supp. 2d at 102*. As the Supreme Court has held, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile work environment may be considered by a court for the purposes of determining liability." *AMTRAK, 536 U.S. at 117*. [*27] Thus to withstand defendant's Motion for Summary Judgment, plaintiff must identify at least one discriminatory act by defendant within the 180-day period prior to the date plaintiff sought counseling, *i.e.,* between April 8, 2001 and October 5, 2001, that contributed to a hostile work environment.

Applying these standards, Brady clearly, fails to establish a prima facie case of a racially hostile work environment. As correctly pointed out by defendant, though plaintiff's "Amended Complaint raises several general, inflammatory statements ... when questioned about specifies, [Brady does] not provide *any* dates, nor recall *any* specific events other than the 'crotch-grabbing' incident and [his] subsequent demotion in March/April 2001," n10 nor could plaintiff "provide even a single reference to, or relationship between, any of the [defendant's] actions and Plaintiff's race." (Def.'s Mot. Summ. J. at 31 (emphasis in original).) Moreover, when asked at his deposition to provide *specific* details to support his claim of a racially hostile work environment, plaintiff answered in only broad, generalized terms. *(See* Brady Dep. at 214-16, 224-25, 230-31.) Likewise, when plaintiff [*28] was specifically asked in a written interrogatory to "[i]dentify each and every incident in which you allege you were subjected to a hostile work environment" (Brady Interrog. Resp. at 10 (attached to Def.'s Mot. Summ. J. as Ex. 22)), plaintiff again failed to cite any specific instances, instead answering with mere generalities *(id.* at 10-11 (attached to Def.'s Mot. Summ. J. as Ex. 22)). n11 Moreover, plaintiff did not identify a single, discrete incident of discrimination within the obligatory 180-day limitation period. Because "[v]ague, conclusory statements are not sufficient to create a genuine issue of material fact," *Kalekiristos, 958 F. Supp. at 665*, plaintiff

has failed to establish a prima facie case of a hostile work environment. Accordingly, defendant's Motion for Summary Judgment is granted on this count of plaintiff's Amended Complaint.

n10 *See supra* note 4.

n11 Plaintiff answered:

> Management, including Patrick Lanigan, Jeanne Mershon, and William Lomax, met routinely two or three times a week in the absence of the African American supervisors William Morris and Standley Brady. Mr. Morris and Mr. Brady were only informed about these meetings after the fact. In addition, the Sergeant at Arms maintained a suggestion box into which anonymous complaints could be submitted. Plaintiff objects to producing information about the dates and times of focus groups, because this information is in the sole possession of the Defendant--Mr. Brady was not invited to the focus groups. Mr. Brady was from *[sic]* his work position on numerous occasions since 1995 when Defendant wished to retaliate against him. Records of Mr. Brady's assignment to work positions are in Defendant's possession.

(Brady Interrog. Resp. at 10-11.) It should be noted that no managers except the Director attended the focus group meeting. (Def.'s Mot. Summ. J. at 33-34.)

[*29]

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's Motion For Summary Judgment. An appropriate Order will issue with this Memorandum Opinion.

RICHARD J. LEON

United States District Judge