# EXHIBIT 3

LEXSEE 2006 U.S. DIST. LEXIS 14343


Analysis
As of: Dec 18, 2006

CHRISTOPHER T. PYNE, Plaintiff, v. DISTRICT OF COLUMBIA, Defendant

Civil Case No. 01-275 (RJL)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*2006 U.S. Dist. LEXIS 14343*

March 15, 2006, Decided
March 16, 2006, Filed

**PRIOR HISTORY:** *Pyne v. Dist. of Columbia, 298 F. Supp. 2d 7, 2002 U.S. Dist. LEXIS 27008 (D.D.C., 2002)*

**COUNSEL:** [*1] For CHRISTOPHER T. PYNE, Plaintiff: Trevor Michael Fuller, Charlotte, NC; Richard T. Brown, Washington, DC.

For DISTRICT OF COLUMBIA, Defendant: Leon Alexander Swinson, Washington, DC; Michael P. Bruckheim, OFFICE OF THE ATTORNEY GENERAL DISTRICT OF COLUMBIA, Washington, DC.

**JUDGES:** RICHARD J. LEON, United States District Judge.

**OPINION BY:** RICHARD J. LEON

**OPINION:**

**MEMORANDUM OPINION**

(March 15, 2006) [# 55]

Plaintiff, Christopher T. Pyne, brought this action against defendant, District of Columbia Public Schools ("DCPS"), and now the District of Columbia, alleging violations of *42 U.S.C. § § 1981, 1983*, and *Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1)* ("Title VII"), for gender, national origin, and racial discrimination and retaliation, as well as violations of District of Columbia law and the *Due Process clause of the Constitution*. Presently before the Court is defendant's motion for summary judgment. For the following reasons, defendant's motion for summary judgment is GRANTED.

**BACKGROUND**

Plaintiff, an African-American male born in Nigeria, was employed as a financial analyst with the DCPS [*2] from September 1986 through January 1997. n1 A Congressionally authorized reduction-in-force ("RIF") resulted in plaintiff's termination from DCPS on January 3, 1997. (Compl. P 5.) After plaintiff's termination through the RIF, plaintiff subsequently applied for the position of business manager at Coolidge Senior High School on March 9, 1998. (Compl. P 6.) Plaintiff was selected for the position and worked at Coolidge Senior High School through March 16, 1998, at which time he was terminated by DCPS. (Compl. P 7.)

n1 The "Background" section of the memorandum opinion has been adapted from this Court's earlier Memorandum Opinion in *Pyne v. District of Columbia, 298 F. Supp. 2d 7 (D.D.C. 2002)*.

Plaintiff claims DCPS human resources informed him that he was terminated because DCPS was not permitted to re-hire employees terminated due to the RIF, pursuant to statements by the Chief Financial Officer. (Compl. P 8; Pl.'s Ex. 4.) However, plaintiff also claims that the general counsel for the Chief Financial [*3] Officer informed him that DCPS was never told not to re-hire persons terminated as part of the RIF. (Compl. P 9; Pl.'s Ex. 5.)

Regardless of any alleged position of the Chief Financial Officer and DCPS on the re-hiring on employees

terminated during the RIF, plaintiff applied to three positions with DCPS in 1999. (Compl. PP 12, 14.) April 1999, plaintiff applied for a business manager position at DCPS, but DCPS did not hire plaintiff for the position. (Compl. PP 12-13.) DCPS selected Lorraine Lamont, an African-American female, for the position instead. (Def.'s Mot. for Summ. J. 2-3.) Plaintiff alleges not only that he was more qualified for the position, but also that a DCPS principal told him that he was the most qualified applicant for the position. (Compl. P 13.)

On June 25, 1999, plaintiff claims to have applied for two more positions with DCPS, a fiscal officer position and a fiscal assistant position. (Compl. P 14.) The plaintiff interviewed for the fiscal officer position (Compl. P 14), but did not interview for the fiscal assistant position (Compl. P 14), and defendant claims to have no record that plaintiff applied for that position (Def.'s Mot. for Summ. J. 3). DCPS selected [*4] Walter Sanders for the position of fiscal officer and, according to defendant, Mr. Sanders has over thirty years experience. (Def.'s Mot. for Summ. J. 3-4.) DCPS selected Clementine Smith, an African-American female, for the fiscal assistant position. (Def.'s Mot for Summ. J. 3.) Ms. Smith was an incumbent, serving in the position when a reorganization in 1999 resulted in Ms. Smith's prior position being separated into two positions. (Def.'s Mot. for Summ. J. 3.)

On September 7, 1999, plaintiff filed a; charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") under Title VII. (PL's Ex. 8.) Plaintiff claimed the DCPS discriminated against him on the basis of his national origin (Nigerian) and his gender when it failed to hire him to the three positions for which he applied in 1999. (PL's Ex. 8.) The EEOC issued plaintiff a right-to-sue letter on November 7, 2000. (PL's Ex. 15.) Plaintiff filed the instant action on February 5, 2001. (*See* Dkt. 1.)

On September 30, 2002, this Court dismissed plaintiff's claim of discrimination under *42 U.S.C. § 1983*, his retaliation claim pursuant to Title VII, and his claims under District of [*5] Columbia law. *See Pyne v. District of Columbia, 298 F. Supp. 2d 7 (D.D.C 2002)*. Defendant now moves for summary judgment of all of the remaining claims.

**ANALYSIS**

I. Standard of Review

Summary judgment is appropriate where the pleadings and documents on record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. In deciding whether an issue of material fact exists, the Court must view the underlying facts in the light most favorable to the nonmoving party, drawing all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*.

The party seeking summary judgment bears the initial burden to illustrate to the court the basis for its motion by identifying the aspects of the record that indicate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. If the moving party meets their burden, the burden shifts to the non-moving party to produce specific facts which establish a genuine [*6] issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*. This requires more than a simple showing that "there is some metaphysical doubt as to the material facts." *Id.* (citations omitted).

The inquiry for the Courtis a threshold inquiry whether "there are any genuine factual issues that properly can be resolved only by a fact finder." *Anderson, 477 U.S. at 250*. If the record indicates that no rational trier of fact could find for the non-moving party, then there is no genuine issue for trial, and summary judgment is appropriate. *Matsushita, 475 U.S. at 586*.

II. Title VII Discrimination Claims

Title VII provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *42 U.S.C. § 2000e-2(a)(1) (2000)*. The Supreme Court set forth the analysis to be performed under Title VII in *McDonnell Douglas. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*. [*7] *McDonnell Douglas* established a burden-shifting framework which places the initial burden on the plaintiff to establish, by a preponderance of the evidence, a prima facie case of discrimination. *Teneyck v. Omni Shoreham Hotel, 361 U.S. App. D.C. 214, 365 F.3d 1139, 1149 (D.C. Cir. 2004)*. *McDonnell Douglas* provided that in order to establish a prima facie case the plaintiff must show:

> (i) that he belongs to a racial minority, (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek appli-

cants from persons of complainant's qualifications.

*411 U.S. at 802.* There is, however, no rigid model for establishing a prima facie case and me requirements can vary depending upon the factual context of each case. *Swierkiewicz v. Sorema, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).*

The initial burden on the plaintiff to establish a prima facie case of discrimination is not an onerous one. *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). McDonnell Douglas* principally [*8] requires little more than that the plaintiff establish that the two most common legitimate reasons that an employer would reject an applicant, an absolute lack of qualifications or the absence of a vacant position, are not present *Teneyck, 365 F.3d at 1150.* Our Circuit has made it clear that a plaintiff does not need to show they were disadvantaged in favor of a person outside of the plaintiff's protected class in order to establish a prima facie case. *Id.* (holding that "it is not necessary for an African-American plaintiff to show that she was disadvantaged by the employer's hiring of a Caucasian applicant, or for a female plaintiff to show that a male was hired in her stead,"). While the hiring of a person of the same race or sex as the plaintiff might be relevant in assessing the merits of the plaintiff's case, it is not a factor in the establishment of a prima facie case. *Id.*

Once a prima facie case is made, the plaintiff has created a rebuttable presumption that the employer has discriminated against him. *Id. at 1151* (citing *United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983).* Establishment of a prima [*9] facie case by the plaintiff triggers the defendant's burden to produce admissible evidence that, if believed, would demonstrate that the defendant's actions were motivated by a legitimate, nondiscriminatory reason. *Id.* The defendant's burden is solely one of production, not persuasion. *Id.*

Lastly, should the defendant carry its burden in articulating a legitimate, nondiscriminatory reason for rejecting the plaintiff, the burden returns to the plaintiff and "the sole remaining issue is discrimination *vel non.*" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).* The plaintiff must be given an opportunity to prove that defendant's proffered explanation is in fact nothing more than a pretext for discrimination. *Id.* The ultimate question becomes whether intentional discrimination may be inferred from all the evidence before the trier of fact. *Id.* The Court will look at

(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as [*10] independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Aka v. Wash. Hosp. Ctr., 332 U.S. App. D.C. 256, 156 F.3d 1284, 1289 (D.C. Cir. 1998)*(emphasis omitted). Incases where the disputed position is filled with a member of the same protected class as the plaintiff, the argument for an inference of discrimination will be severely undermined. *See Murray v. Gilmore, 365 U.S. App. D.C. 372, 406 F.3d 708, 715 (D.C. Cir. 2005); see also Teneyck, 365 F.3d at 1151.* At this stage, if the plaintiff cannot produce evidence that would allow a reasonable trier of fact to conclude the defendant's proffered reason was pretextual, summary judgment must be entered for the defendant. *Paquin v. Fannie Mae, 326 U.S. App. D.C. 224, 119 F.3d 23, 28-29 (D.C. Cir. 1997).*

Defendant argues that plaintiff failed to make out a prima facie case. The Court disagrees. Plaintiff established that he, being an African-American male and. of Nigerian origin, is a member of a protected class under the*McDonnell Douglas* framework. [*11] Additionally, the plaintiff has shown that he was qualified for positions which were available. (*See* Pl.'s Ex. 1.) In demonstrating these two facts the plaintiff has met the minimum standard required to establish a prima facie case of discrimination.

Having established a prima facie case of discrimination, the burden now shifts to the defendant to articulate some legitimate, nondiscriminatory reason for not hiring plaintiff. *Teneyck, 365 F.3d at 1151.* The defendant has met this burden. The defendant explained that the fiscal officer position was filled by Mr. Walter Sanders, who was selected because of his vast experience spanning over thirty years. (Def.'s Mot. for Summ. J. 3-4.) The fiscal assistant position, for which defendant has no record of plaintiff applying for and which plaintiff admits he never interviewed for, was filled by Ms. Clementine Smith, who was an incumbent to the position which was created from a split of her current duties into two positions. (Def.'s Mot. for Summ. J. 3.) The final position, that of business manager, was filled by Ms. Lorraine

Lamont, who was, according to defendant, the most qualified applicant and described by the deciding [*12] official as "highly motivated." (Def.'s Mot. for Summ. J. 2-3.) For these reasons, defendant has met its burden.

Having provided legitimate, nondiscriminatory reasons for its hiring decision, the burden returns to the plaintiff to introduce evidence, or demonstrate from the record, why a reasonable trier of fact could conclude the defendant's reasons are merely a pretext for discrimination. *Teneyck, 365 F.3d at 1151*. The plaintiff has failed to meet this burden. Plaintiff's prima facie case established little more than the fact that he is a member of a protected class and qualified for available positions. Plaintiff's case is severely undermined by the fact that the defendant filled two of the three positions for which plaintiff applied for with fellow African-Americans. If plaintiffs: argument is that defendant specifically discriminates against Nigerians, plaintiff has offered no evidence to support such a claim. Indeed, the plaintiff has not even established that the defendant knew that he was of Nigerian origin.

Furthermore, and most detrimental to the plaintiff, is the fact that plaintiff has offered no evidence that the defendant's explanations for its decisions [*13] are merely pretextual. Plaintiff's assessment that he was the most qualified for the job does not establish the defendant's explanations are not its true motives. *See, e.g., Tolson v. James, 315 F. Supp. 2d 110, 116 (D.D.C. 2004); Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 7 (D.D.C. 2000), aff'd, 353 U.S. App. D.C. 205, 298 F.3d 989, 997 (D.C. Cir. 2002)*. The Court also finds compelling the fact that of the seventy-three employees in the department to which plaintiff applied, sixty are African-American and ten belong to other minority groups. (Def.'s Mot. for Summ. J. 4; Def.'s Ex. 5.) Because the plaintiff has not introduced any evidence sufficient to establish that a reasonable trier of fact could find defendant's proffered reasons for not hiring plaintiff are merely a pretext for discrimination, defendant's motion for summary judgment on plaintiff's Title VII claims is GRANTED.

III. Plaintiff's *42 U.S.C. § 1981* Claims

Plaintiff asserts that his termination from Coolidge Senior High school as the business manager on March 1.6, 1998, and DCPS' subsequent non-selection of him for the three positions to which he [*14] applied was racially motivated and in violation of *42 U.S.C. § 1981 (2000)*. Section 1981 guarantees freedom from racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *42 U.S.C. § 1981(b)*. Our Circuit has adopted the *McDonnell Douglas* framework to analyze a *Section 1981* claim. *See Murray v. Gilmore, 365 U.S. App. D.C. 372, 406 F.3d 708, 713 (D.C. Cir. 2005)*.

As discussed above, the *McDonnell Douglas* framework requires that the plaintiff first establish a prima facie case of discrimination. *Teneyck v. Omni Shoreham Hotel, 361 U.S. App. D.C. 214, 365 F.3d 1139, 1149 (D.C. Cir. 2004)*. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory explanation for the inference of discrimination in the challenged employment decision. *Id. at 1151*. The employer's burden is only that of production, not of persuasion. *Id.* If the employer meets its burden, the plaintiff must be given the opportunity to show why the proffered [*15] reasons are pretextual. *Id.*

As with plaintiff's Title VII claims, plaintiff has failed to do little more than make a prima facie case. While the plaintiff has met the minimal burden required to establish a prima facie case, so too has the defendant met its burden to produce a legitimate nondiscriminatory explanation for plaintiff's termination. The defendant has explained that the plaintiff was terminated from the business manager position due to confusion regarding the re-hiring of employees who were fired because of the RIF. (Def.'s Mot. to Dismiss 1.) Plaintiff has offered no evidence that the firing was a pretext for racial discrimination.

As for plaintiff's claims in regard to his application to the three positions with DCPS, the defendant has produced legitimate, nondiscriminatory explanations for its hiring choices. Mr. Sanders, selected for the fiscal officer position, has over thirty years experience in education and training in the area of financial management (Def.'s Mot. for Summ. J. 3-4), and Ms. Smith was the incumbent for the position of fiscal assistant (Def.'s Mot. for Summ. J. 3). In addition, DCPS has no record of plaintiff applying for or interviewing for [*16] the fiscal assistant position (Def.'s Mot. for Summ. J. 3), and plaintiff admits he did not interview for that position (Compl. P 14). Lastly, Ms. Lamont was determined to be the most qualified and highly motivated applicant for the position of business manager. (Def.'s Mot. for Summ. J. 2-3.) Again, plaintiff has offered no evidence that these explanations are a pretext for racial discrimination.

To the contrary, plaintiffs assertions of racial discrimination are severely undercut by the fact that both positions were filed by members of the same racial class as the plaintiff. *See Murray v. Gilmore, 365 U.S. App. D.C. 372, 406 F.3d 708, 715 (D.C. Cir. 2005)*. While hiring from the same protected class will *never guarantee* an absence of racial discrimination, the Court finds it compelling that two of the three positions for which the plaintiff claims racial discrimination, were filled with

people from the same protected class as the plaintiff. *See id.* Furthermore, the racial composition of the DCPS department from which plaintiff alleges he was terminated strongly opposes any inference of discrimination on the basis of race. n2 (See Def.'s Mot. for Summ. J. 4; Def.'s Ex. 5.) For the [*17] foregoing reasons, defendant's motion for summary judgment on plaintiff's § *1981* claims is GRANTED.

n2 It should be noted that plaintiff's claims that defendant violated *Section 1981* by discriminating against his national origin and sex, additionally are without legal support. *42 U.S.C. § 1981* does not prohibit discrimination based on national origin per se. *Amiri v. Hilton Washington Hotel, 360 F. Supp. 2d 38, 42 (D.D.C. 2003)*. Nor does § *1981* prohibit discrimination on the basis of gender. *See Runyon v McCrary, 427 U.S. 160, 167, 96 S. Ct. 2586, 49 L. Ed. 2d 415 (1976)*. *42 U.S.C. § 1981* only refers to racial discrimination, and therefore plaintiff's claims of national or gender discrimination under *Section 1981* must fail.

IV. Plaintiff's Due Process Claim

Lastly, plaintiff's due process claim must also fail. In order to bring a claim of racial discrimination in violation of the Constitution, the plaintiff must establish a discriminatory purpose by [*18] the defendant in failing to hire the plaintiff. *See Washington v. Davis, 426 U.S. 229, 239-42, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976)*; *see also Fernandors v. District of Columbia, 382 F. Supp. 2d 63, 69 (D.D.C. 2005)*("An allegation of racial discrimination in violation of the Constitution's guarantee of equal protection cannot survive unless the plaintiff establishes that the defendant acted with discriminatory intent."). Because the plaintiff has not established that the defendant had any discriminatory intent, defendant's motion for summary judgment on plaintiff's due process claim is GRANTED.

CONCLUSION

For the foregoing reasons, the Court GRANTS [# 55] defendant's motion for summary judgment An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON

United States District Judge

For the reasons set forth above, it is this 15th day of March, 2006, hereby

**ORDERED** that defendant's Motion for Summary Judgment *[# 55]* is **GRANTED,** and it is further

**ORDERED** that the case is dismissed with prejudice.

**SO ORDERED**.

RICHARD J. LEON

United States District Judge