UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAMI ELHUSSEINI<br><br>Plaintiff,<br><br>v.<br><br>COMPASS GROUP USA, INC., <u>et al.</u><br><br>Defendants. | Case No. 1:06-cv-00100-RBW<br>FILED VIA ECF |

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rules 7(h) and 56.1, Defendants Restaurant Associates, Inc. ("RA" or the "Company") and Compass Group USA, Inc. ("Compass") submit this Statement of Undisputed Material Facts[1] in support of their Motion for Summary Judgment.

<u>Plaintiff Interviews To Work At RA</u>

1.      Plaintiff began working as a line cook at Woodley Café in April 2004. Deposition of Plaintiff Rami Elhussieni ("Plaintiff's Depo.") p. 44, attached hereto as Exhibit A.

2.      Plaintiff had no food-related jobs other than as a line cook at Woodley Café before he applied to work at RA. Plaintiff's Depo. p. 44.

3.      Plaintiff first interviewed to work at RA with Tara Peralta, Sous Chef at the Mitsitam Café at the National Museum of the American Indian ("NMAI"), in late August or early September 2004. Plaintiff's Depo. pp. 68-70.

---

[1] Defendants' Statement of Undisputed Material Facts is offered only for purposes of this Motion for Summary Judgment, and without prejudice to their right to dispute these facts should this case proceed to trial.

4.  Ms. Peralta did not make any discriminatory remarks during Plaintiff's interview. Plaintiff's Depo. p. 70.

5.  A few days after his interview with Ms. Peralta, Plaintiff had a second interview to work at RA with Richard Hetzler, Chef at the Mitsitam Café. Plaintiff's Depo. pp. 70-71.

6.  Mr. Hetzler did not make any discriminatory remarks during Plaintiff's interview. Plaintiff's Depo. p. 72.

7.  Mr. Hetzler decided to hire Plaintiff as a Line Server. Plaintiff's Depo. pp. 131-32; Declaration of Richard Hetzler ("Hetzler Dec.") ¶ 2, attached hereto as Exhibit B.

<u>Plaintiff Begins Working At RA</u>

8.  Plaintiff began working as a Line Server at RA on or about September 8, 2004. Plaintiff's Depo. pp. 73-74.

9.  Plaintiff's pay rate when he started at RA was $10 per hour. Plaintiff's Depo. p. 74.

10. Plaintiff received a copy of RA's Employee Handbook when he started working at RA. Plaintiff's Depo. pp. 95-96.

11. Mr. Hetzler explained the policies contained in the RA Employee Handbook to all of the RA employees, including Plaintiff. Plaintiff's Depo. pp. 97-98.

12. Plaintiff was familiar with the Equal Employment Opportunity Policy, the Open Door Policy, the Workplace Violence Policy, and the Standards of Behavior contained in RA's Employee Handbook. Plaintiff's Depo. pp. 97-98; Excerpts of RA Employee Handbook, attached hereto as Exhibit C.

13. Plaintiff read the Employee Handbook before he signed an Acknowledgement of Receipt for the Handbook. Plaintiff's Depo. pp. 96-97; Receipt for RA Employee Handbook, attached hereto as Exhibit D.

14. While Plaintiff worked for RA, he saw the postings regarding Equal Employment Opportunity, the Zero Tolerance Discrimination and Harassment Policy, and the BeAware hotline. Plaintiff's Depo. pp. 99-101; Compass Postings, attached hereto as Exhibit E.

15. While Plaintiff worked for RA, he also received an Interoffice Memo regarding the Open Door Policy. Plaintiff's Depo. pp. 101-02; Interoffice Memo to All Employees from Robin Cerrati re Open Door Policy dated August 3, 2005, attached hereto as Exhibit F.

16. Plaintiff's duties as a Line Server were to clean and prepare the food station at the start of his shift, serve food to customers and maintain the food station during his shift, and clean the food station at the end of his shift. Plaintiff's Depo. pp. 102-03.

17. While Plaintiff worked at RA, he asked for and received some training in the kitchen. Plaintiff's Depo. pp. 124-25.

RA Hires Two New Cooks

18. Plaintiff believes he should have been promoted to cook in March 2005. Plaintiff's Depo. p. 121.

19. Plaintiff never filled out an application or did anything to apply for a cook position. Plaintiff's Depo. pp. 124-25.

20. In or around March 2005, RA hired Derek Pipher as a cook and Janette O'Sullivan as a cook. Plaintiff's Depo. p. 126.

21. Plaintiff does not know how many years of experience as a sous chef or cook Mr. Pipher had, how many years of experience in food service Mr. Pipher had, or at how many restaurants Mr. Pipher worked before joining RA. Plaintiff's Depo. pp. 127-30.

22. Before RA hired Mr. Pipher, he had more than 15 years experience in the food industry, and had worked as a chef or a cook at four restaurants over the course of eight years. See Resume of Derek Pipher, attached hereto as Exhibit G.

23. Plaintiff does not know how many years of experience as a sous chef or cook Ms. O'Sullivan had, how many years of experience in food service Ms. O'Sullivan had, or at how many restaurants Ms. O'Sullivan worked before joining RA. Plaintiff's Depo. pp. 132-33.

24. Before RA hired Ms. O'Sullivan, she had worked as a chef at five restaurants over the course of more than six years, and had graduated from culinary school. See Resume of Janette O'Sullivan, attached hereto as Exhibit H.

25. The minimum qualifications for the cook positions obtained by Mr. Pipher and Ms. O'Sullivan were: (1) one year cooking experience in a high volume kitchen; (2) ability to use knife and demonstrate basic knife skills; (3) ability to work independently with speed and accuracy; and (4) ability to read and understand basic menu techniques. Hetzler Dec. ¶ 3.

26. Plaintiff was not qualified for nor considered for either of the cook positions filled by Mr. Pipher and Ms. O'Sullivan. Hetzler Dec. ¶ 4.

27. Mr. Hetzler decided to hire Mr. Pipher and Ms. O'Sullivan. Hetzler Dec. ¶ 5.

28. While he was employed by RA, Plaintiff never complained to anyone at RA about Mr. Pipher and Ms. O'Sullivan being hired as cooks. Plaintiff's Depo. p. 134.

29. While he was employed by RA, Plaintiff never complained to anyone at RA that he thought he did not get a cook position because of discrimination. Plaintiff's Depo. pp. 134-35.

30. In May 2005, Plaintiff's performance was rated at the high end of the "Meets Expectations" range. Plaintiff's Depo. p. 109.

Plaintiff's Arguments With His Coworker In August 2005

31. On August 12, 2005, Plaintiff had an argument with a coworker named Chris Spangler. Plaintiff's Depo. p. 143.

32. Plaintiff and Mr. Spangler were working on the same food station on August 12, 2005. Plaintiff's Depo. p. 144.

33. Plaintiff was critiquing Mr. Spangler's work performance because Mr. Spangler was a new RA employee, and Mr. Spangler allegedly made disparaging remarks about Plaintiff being homosexual and threatened to beat Plaintiff up. Plaintiff's Depo. pp. 144-45.

34. Other RA employees working at the food station and customers waiting in line at the food station heard Mr. Spangler's remarks. Plaintiff's Depo. p. 148.

35. On August 12, Plaintiff reported the argument with Mr. Spangler to either Ms. Peralta or Mr. Hetzler. Plaintiff's Depo. p. 149.

36. On August 12, Plaintiff and Mr. Spangler met with Mr. Hetzler and Mr. Pipher. Plaintiff's Depo. pp. 149-50.

37. During the August 12 meeting, Mr. Hetzler told Plaintiff and Mr. Spangler that they had to work together and to put their problems behind them. Plaintiff's Depo. pp. 150-51.

38. Both Plaintiff and Mr. Spangler went back to work after the August 12 meeting and finished their shifts. Plaintiff's Depo. pp. 153-54.

39. On August 13, 2005, Plaintiff had another argument with Mr. Spangler. Plaintiff's Depo. p. 156.

40. Plaintiff and Mr. Spangler were working on the same food station on August 13, 2005. Plaintiff's Depo. p. 156.

41. Plaintiff was again critiquing Mr. Spangler's work performance, and Mr. Spangler again allegedly made disparaging remarks about Plaintiff being homosexual and threatened to beat Plaintiff up. Plaintiff's Depo. pp. 156-59.

42. Other RA employees working at the food station and customers waiting in line at the food station heard Mr. Spangler's remarks. Plaintiff's Depo. p. 158.

43. Plaintiff did not report the August 13 argument to anyone at RA that day. Plaintiff's Depo. pp. 168-69.

Plaintiff's Fist Fight With His Coworker

44. At or around 4 pm on August 13, Plaintiff accompanied Mr. Spangler down to the locker room at work. Plaintiff's Depo. p. 173.

45. Both Mr. Spangler and Plaintiff clocked out at around 4 pm. Plaintiff's Depo. pp. 174-75.

46. Mr. Spangler had permission to leave work at 4 pm on August 13. Plaintiff's Depo. pp. 173-74.

47. Plaintiff did not have permission to clock out from work at 4 pm on August 13. Plaintiff's Depo. p. 196.

48. Plaintiff followed Mr. Spangler outside NMAI and across the street to the Air & Space Museum. Plaintiff's Depo. pp. 175-77.

49. Plaintiff grabbed Mr. Spangler's arm and a fist fight broke out. Plaintiff's Depo. p. 177.

50. At the end of the fist fight, Plaintiff grabbed Mr. Spangler's sunglasses, stepped on the sunglasses and broke them. Plaintiff's Depo. p. 178.

51. After the end of the fist fight, Plaintiff returned to NMAI and reported to Mr. Pipher that his locker was damaged, but did not report either the August 13 argument or the fist fight. Plaintiff's Depo. pp. 170-71, 181-82.

52. Mr. Pipher took pictures of the damaged locker and allowed Plaintiff to store his personal belongings in the office. Plaintiff's Depo. p. 170.

53. Plaintiff clocked back into work around 4:30 pm, worked for another hour, and then clocked out at 5:30 pm, the end of his shift for the day. Plaintiff's Depo. p. 182.

### The Events Of August 14, 2005

54. On August 14, Plaintiff went to work at 9 am as scheduled. Plaintiff's Depo. pp. 188-89.

55. When he arrived at work, Plaintiff was summoned to the office by Mr. Pipher. Plaintiff's Depo. pp. 189-90.

56. Mr. Pipher asked Plaintiff what had happened with Mr. Spangler the previous day. Plaintiff's Depo. p. 190.

57. Plaintiff told Mr. Pipher that what had happened outside NMAI was his personal business. Plaintiff's Depo. p. 190.

58. Mr. Pipher told Plaintiff not to work on the same station as Mr. Spangler, not to talk to Mr. Spangler, and not to talk to anyone about what had happened the previous day. Plaintiff's Depo. pp. 191-92.

59. Later that day, Plaintiff met with Ms. Peralta and Mr. Pipher. Plaintiff's Depo. p. 192.

60. Ms. Peralta told Plaintiff that she was investigating what had happened on August 13 and that Plaintiff was suspended until the investigation was complete. Plaintiff's Depo. pp. 192-93; Corrective Communication dated August 14, 2005, attached hereto as Exhibit I.

61. Plaintiff was sent home after the August 14 meeting with Ms. Peralta and Mr. Pipher. Plaintiff's Depo. p. 199.

The Events Of August 16, 2005

62. On August 16, 2005, Ms. Peralta called Plaintiff and asked him to come in to meet with her and Larry Ponzi, Director of the Mitsitam Café. Plaintiff's Depo. pp. 199-200.

63. On August 16, Plaintiff met with Ms. Peralta, Courtney Willis, Controller of the Mitsitam Café, and Mr. Ponzi. Plaintiff's Depo. p. 200.

64. During the August 16 meeting, Plaintiff wrote his account of the fist fight. Plaintiff's Depo. p. 202; Plaintiff's Statement dated August 16, 2005, attached hereto as Exhibit J.

65. Plaintiff was terminated for clocking out without permission and starting a fight with a coworker. Corrective Communication dated August 16, 2005, attached hereto as Exhibit K.

66. No one made any discriminatory remarks during the August 16 meeting. Plaintiff's Depo. p. 206.

67. Plaintiff does not know of any RA employee who has clocked out without permission and started a fight with a coworker and not been terminated. Plaintiff's Depo. p. 239.

68.     Plaintiff believes someone in RA's Human Resources Department discriminated against him with respect to the cook promotion and the termination of his employment. Plaintiff's Depo. p. 216.

69.     Plaintiff believes he was discriminated against because he is of Lebanese national origin and has pro-Zionist beliefs. Plaintiff's Depo. pp. 42-43.

70.     Plaintiff has no evidence that anyone in RA's Human Resources Department knew of his pro-Zionist beliefs or his Lebanese national origin. Plaintiff's Depo. p. 217.

71.     While Plaintiff worked at RA, no manager ever made any discriminatory comments. Plaintiff's Depo. p. 119.

<u>Plaintiff Contacts Defendants After His Termination</u>

72.     On August 16, Plaintiff called the BeAware hotline regarding his termination. Plaintiff's Depo. pp. 207-09.

73.     On August 18, 2005, Plaintiff spoke by telephone with Sherley Montina at RA's Human Resources Department about his termination. Plaintiff's Depo. pp. 210-11.

74.     Plaintiff explained the fist fight with Mr. Spangler and Ms. Montina told Plaintiff that the termination decision would not be reconsidered. Plaintiff's Depo. pp. 212-14.

75.     Ms. Montina did not make any discriminatory remarks to Plaintiff during their August 18 telephone conversation. Plaintiff's Depo. p. 215.

76.     In late August 2005, Plaintiff spoke twice by telephone with Robin Cerrati at RA's Human Resources Department about his termination. Plaintiff's Depo. p. 218.

77.     During those two telephone calls, Plaintiff explained the fist fight with Mr. Spangler and asked that his termination be reconsidered. Plaintiff's Depo. pp. 219-21.

78. Ms. Cerrati did not make any discriminatory remarks to Plaintiff during their August telephone conversations. Plaintiff's Depo. pp. 224-26.

79. After the two telephone calls with Ms. Cerrati, Plaintiff sent her an email message demanding millions of dollars. Plaintiff's Depo. pp. 226-27; Electronic Mail Message from Plaintiff to Robin Cerrati dated August 20, 2005, attached hereto as Exhibit L.

80. On September 1, 2005, Ms. Cerrati sent Plaintiff a letter confirming his termination for clocking out without permission and fighting with a coworker. Plaintiff's Depo. pp. 228-29; Letter from Robin Cerrati to Plaintiff dated September 1, 2005, attached hereto as Exhibit M.

81. In September 2005, Plaintiff spoke twice by telephone with Joe Machicote, Compass Ombudsman, about his termination. Plaintiff's Depo. pp. 231-36.

82. During those two telephone calls, Plaintiff explained the fist fight with Mr. Spangler and asked that his termination be reconsidered. Plaintiff's Depo. pp. 231-36.

83. Mr. Machicote told Plaintiff that his termination would not be reconsidered. Plaintiff's Depo. p. 236.

84. Mr. Machicote did not make any discriminatory remarks to Plaintiff during their September telephone conversations. Plaintiff's Depo. p. 237.

Plaintiff's Employment During And Since RA

85. Plaintiff continued to work at Woodley Café for the first two weeks he was employed by RA. Plaintiff's Depo. pp. 47-48.

86. Plaintiff worked about 10 hours a week at Woodley Café between December 2004 and March 2005. Plaintiff's Depo. pp. 53, 62.

87. Plaintiff worked between 15 and 20 hours a week at The Diner between March 2005 and August 2005. Plaintiff's Depo. pp. 56-57, 61.

88. Plaintiff began working full-time at The Diner within one week of his termination from RA. Plaintiff's Depo. p. 61.

89. Plaintiff was terminated from The Diner in November 2005 because he had an altercation with his manager. Plaintiff's Depo. pp. 62-63.

90. Plaintiff worked between 20 and 25 hours a week at Woodley Café between December 2005 and February 2006. Plaintiff's Depo. pp. 63-65.

91. Plaintiff was terminated from Woodley Café in February 2006 because he had an altercation with his manager. Plaintiff's Depo. pp. 65-66.

92. Plaintiff has not had a job since February 2006. Plaintiff's Depo. p. 240.

93. Plaintiff stopped looking for a job in October 2006. Plaintiff's Depo. p. 249.

94. Plaintiff has knowledge of the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's Depo. pp. 26-27.

95. Plaintiff did not file a charge with the EEOC or any government agency against either RA or Compass. Plaintiff's Depo. pp. 31-32.

Dated: December 20, 2006

Respectfully submitted,

LITTLER MENDELSON, P.C.

By: /s/ Katherine A. Goetzl
Paul J. Kennedy (D.C. Bar No. 428623)
Katherine A. Goetzl (D.C. Bar No. 457660)
1150 17th Street N.W., Suite 900
Washington, DC 20036
202.842.3400 telephone
202.842.0011 facsimile

Counsel for Defendant Compass Group USA, Inc. and Defendant Restaurant Associates, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that, on December 20, 2006, a copy of the foregoing Defendants' Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment was served by first class mail, postage prepaid, upon the following:

>Rami Elhusseini
>2517 Mozart Place, NW
>Apt. 103
>Washington, DC  20009
>
>Plaintiff pro se

>/s/ Katherine A. Goetzl
>Katherine A. Goetzl

Firmwide:81705882.1 024778.1145