UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*Rami Elhusseini,*
*Plaintiff*

*V.*

*Compass Group Inc.,*
*Restaurant Associates,*
*Defendants*

Civil Action No: 06-0100, RBW

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to rule 56 a) of the Federal Rules of Civil Proceedings, Plaintiff Rami Elhusseini, Pro-Se, hereby moves the court for an order granting summary judgment in favor of all Plaintiff's claims. Plaintiff claims Defendants unjustly terminated his employment, inflicted emotional stress in a premeditated fashion and caused detriment to professional career by not promoting him during employment and after separation through negative referral as a way of retaliation.

Defendants filed a motion for summary judgment on the 20th of December 2006 and based their demand on these assertions; that Plaintiff could not prove a prima facie case to his claims, Defendants' legitimate reason for not promoting, no proof of pretext and Plaintiff's failure to file discrimination charges with the Equal Employment Opportunity Commission "EEOC".

Plaintiff hereby replies to Defendants' arguments, establishes a prima facie case in each of his claims and provides clear and convincing evidence to that effect. Plaintiff will prove pretext in termination process and in lack of promotion. Plaintiff will prove exhaustion of administrative remedies prior to litigation and during mediation. Defendants should be barred from using the argument on lack of charges through the EEOC by the statute of limitation and doctrines of estoppel unclean hands and latches.

RECEIVED
JAN 19 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

The termination process did not follow the normal procedure and dismissed critical witnesses' accounts of related incident. Witnesses' accounts postdating the termination decision prove pretext. Lack of promotion also shows pretext. Promotion in Plaintiff's case isn't necessarily to the Sous Chef position but to more responsibility on the service line or to a beginner cook's. Promotion of Plaintiff would have been possible if one of several qualified RA (Restaurant Associates) veteran employees were promoted into position(s) filled by the new cooks. Said employees are Caribbean and African-American. Promotion of employees would have lead to a vacancy on the cooking line, lack of application notwithstanding due to promise.

Defendants should be barred by the statute of limitation and the doctrine of estoppel latches and clean hands from objecting to the lack of a charge filing through the EEOC for several reasons; 1-being that they claim to be an EEO company and agency ensuring the "affirmative implementation" of EEO policies, 2-being that the Open Door option was exhausted including the company Ombudsman contact instigated by Compass's Vice President of Corporate Communication and 3-being that all other administrative methods were exhausted by Plaintiff including notifications of Demand, dispute resolution requests and notification of all levels of management in both daughter and parent companies. Similarly in the assertion that denial of promotion is legitimate because it contradicts earlier positions where employer promised advancement for deserving employees during hiring, orientation and literature.

### Points, Authorities and Material Facts.

As to the termination procedure:

Firstly: Defendants' reasons for termination shifted between several positions. Defendants claimed "harassment, violation of company policy or procedure, attempts to fight on company policy" with two prior verbal warnings in the incident report dated 14th of August 2005[1].

---

[1] Report of incident (corrective communication for non-exempt associates) dated 8/14/05 Ref. RA0052

Defendants changed their position to "harassment, violation of company policy or procedure, fighting on company time" without prior verbal warnings in the termination report dated 16th August 2005[2]- neither reports signed by Plaintiff.

Defendants then adopted "walking off the job, disorderly conduct, insubordination, mishandling of a workplace issue that resulted in workplace violence, fighting on company time with the intent to harm another employee" as well as failure to "seek out the proper venue of available management or Human Resources counsel" according to the Human Resources Vice-President letter dated September 1st 2005[3]. Defendants settled on "clocking out without permission and starting a fight with a coworker" which is the current position upheld through counsel.

An electronic communication dated 14th August 2005 from Sous-Chef Tara Peralta also writes "Rami ...had premeditated this whole situation...I will ask Derek to write up a statement about this situation as well and leave it on Larry and Courtney's desk. Rich is planning on calling HR tomorrow and verify we can terminate for these reasons"[4].

Reply: Plaintiff after clocking out had clocked back in and returned to finish his shift on the date of the incident as Defendants concede. Plaintiff had clocked out at the time of his lunch break -which due to the rush hour was delayed to a later time than normal lunch time as is common procedure on a busy day. Plaintiff was not missed nor had lagged in any of his duty requirements at the time of his clocking out nor did Plaintiff lag in his duty requirements after clocking back in; therefore the reason for termination being walking off the job is false and a blatant pretext for termination since the job was indeed finished and the workstation returned to. Plaintiff did not walk off the job.

Defendants concede that lunch is a reason to clock out. When incident between Plaintiff and Mr. Spangler was investigated the given reason for termination was "attempt to fight on company time", lunch being company time. Plaintiff replied that upon clocking out for lunch he'd opted for "out for the day" instead of "out for lunch" option.

---

[2] Report of incident (corrective communication for non-exempt associates), dated 8/16/05 Ref. RA0053
[3] Letter from Robin Cerrati Vice-President of Human Resources, 9/1/05 Ref. RA0063
[4] Email from Tara Peralta to Courtney Willis, Richard Hetzler, Larry Ponzi, titled Tara Statement, sent 8/14/05, 1:37 PM. Ref. RA0054

3

Plaintiff's option absolves the company from any liability with regards to his actions during employment, as if lunch were to be purchased outside of the Museum building.

The decision to opt for "out for the day" instead of "out for lunch" may have needed a manager's permission. The option is a way to add the lunch break minutes out of employees' billable hours and keep them under the workplace insurance policy. Permission would be needed in a theoretical setting where Plaintiff wished to be covered by the workplace insurance during the exchange with Mr. Spangler in case it developed to a violent interaction. This theoretical setting is the only valid grounds for the termination to be based on "clocking out without permission". Defendants should prove however that Plaintiff intended to resort to physical violence, that he sought workplace coverage during the alleged violent resolution and got management's approval to do so but did not get permission then and there. All of these conditions have to be met in order for the "clocking out without permission" to be a reason for termination in good faith.

Plaintiff was expected to clock out[5] as Ms. Peralta concedes. She further states the need to "verify we can terminate for these reasons" which is also proof of pretext. The decision to terminate Plaintiff was already taken but still needed a suitable format.

Whether in retaliation on behalf of Mr. Spangler (exaggerating incident because he is Caucasian) or manufacture (to terminate Plaintiff), Defendants are liable for unjust termination be it as offense against Plaintiff's civil rights or as tort because of conspiracy.

As a matter of fact in his statement dated the 15th August 2005[6], referred to in Sous-Chef Peralta's communication, Mr. Pipher characterizes the actions of coworkers Edgar and Hobart as restraining Plaintiff while Mr. Spangler exited the museum. This characterization was used as a pretext for termination in the first incident report made on the 14th and was denoted as "attempt to fight on company policy, violation of company policy". Mr. Pipher's characterization was also used in the termination report made on the 16th as "fighting on company time, violation of company policy". Witnesses accounts dated on the 22nd August 2005 fail to corroborate Mr. Pipher and Ms. Peralta's accounts.

---

[5] Colleagues expected Plaintiff's break which excludes the need for a permission per se, Ref. RA0054
[6] Statement from Derek Pipher, signed Derek Pipher NMAI Sous Chef dated 8/15/05 Ref. RA0057

4

Mr. Hobart Wilson wrote that "Chris and Edgar began making threatening remarks at Rami (who) just laughed, and Edgar told Chris to go home that he had work to do at no time was Rami restrained and Rami returned to the café and Chris left"[7] proving that Mr. Spangler made threats on company premises and that Edgar left his work without permission. Neither coworker was reprimanded for his actions although clearly in violation of company policy. The location and timeframe of the altercation between Plaintiff and coworker were not in violation of policy in terms of the company premises or the company clients' premises.

Mr. Edgar conceded that he did not clock out nor get a permission to leave the café and that Plaintiff did not act violently on company premises: "Chris came in and asked me to step outside...I notice there was a group of people outside that was watching the incident and nobody intervene so I kept stepping at Ramie"[8]. The manager did not find it necessary for Edgar to get permission prior to leaving the workplace in that context proving that double standards were adopted in the termination procedure to serve ulterior motives than propriety of company policy. In addition the place of the altercation falls exclusively under the jurisdiction of the District of Columbia Police Department which entitles Mr. Spangler to file a report had he felt harassed by Plaintiff.

On August 13th 2005 upon discovering the damage done to Plaintiff's locker[9], Mr. Pipher asked Plaintiff to gather his belongings in a trash bag and leave it in the Chef's office. Mr. Pipher did not make any tentative to investigate the incident through Human Resources or any other manager than himself. Mr. Pipher had refused to consider Mr. Spangler a possible agent of damage done to Plaintiff's locker. Mr. Pipher's statement dated August 15th 2005 acknowledges that he and Ms. Peralta conferred with Mr. Spangler on the 13th regarding his argument with Plaintiff. Mr. Pipher further states that "Chris had been given permission by me to leave early at 4pm". Defendants claim Plaintiff did not report argument with coworker on August 13th prior to their fist fight.

---

[7] Statement from Hobart Wilson, dated 8/22/05, Ref. RA0058
[8] Statement from Mr. Edgar, signed and dated 8/22/05, Ref. RA0059
[9] Plaintiff found his locker damaged and unusable; door had to be pried open to recover belongings before Plaintiff could return home once shift was over. Statement of Mr. Pipher dated 8/15/05 Ref. RA0057.

5

Mr. Pipher admitted to addressing the issue with Plaintiff along with Ms. Peralta and resolving it. Mr. Spangler then asked to use Plaintiff's locker room key. Mr. Spangler was given permission to leave early after returning Plaintiff's key.

Mr. Pipher stated on August 15th that "after talking to Chris Sunday morning I told him that I would have a talk with Rami and that I would be separating both them for the day" and "Both (Rami and Chris) were instructed not to talk to one another or anyone about what had happened the day before". Mr. Pipher's accounts leave unanswered the question as to why did he not separate Plaintiff and Mr. Spangler ahead on the day of incident. Day of incident was a Saturday meaning a busy shift. Mr. Pipher decided to assign coworkers to the same station following a prior altercation and managerial intervention on the previous day. Mr. Spangler was not assigned to his usual workstation.
Ms. Peralta claimed that Plaintiff "obviously…had premeditated this whole situation" in her August 14th 2005 statement regarding the incident.
Robin Cerrati wrote on September 1st 2005 that "mishandling of a workplace issue that resulted in workplace violence" was one of the reasons to terminate Plaintiff.

Mr. Pipher stated on August 15th that "until I could contact Richard or other management" and "after talking with other management Tara and (I) determined that Rami would be suspended pending an investigation". Mr. Pipher acknowledges contacting "other management" than Chef Hetzler who is supposedly the decision maker according to the Defendants[10].
Mr. Pipher did not contact "other management" about Plaintiff's busted locker. These accounts prove that normal procedure and decision-making hierarchy were not followed in building up the argument against Plaintiff. The unusual termination procedure also implicates the Human Resources (whoever Mr. Pipher designated by "other management") in fabricating the reasons to terminate Plaintiff. The incident instigated and precipitated through Mr. Pipher's decisions then investigated and reported by him shows pretext and is tantamount to conspiracy.

---

[10] Affidavit from Richard Hetzler "Declaration of Mr. Hetzler" regarding hiring procedure, dated 12/19/06, Ref. Exhibit C in Defendant's Material Facts in support of Summary Judgment

Secondly: Defendants claim that Plaintiff did not know of any similarly situated person from outside the protected class who was treated differently and that Plaintiff acknowledges the truth of Defendants' termination reasons and that Defendants did not make any discriminatory comments.

Reply: Plaintiff concedes that coworkers who abandoned their workstation before their shift was finished were terminated in reply to the question on whether the company fired previous employees for walking off the job.
The case at hand is clearly not a similar situation because Plaintiff had finished his shift, was expected to get a lunch break and did return to his station finish his workload as Defendants concede. Plaintiff did not walk off the job.
Plaintiff concedes that fighting on company time and infraction of company policy are true reasons for termination; however Plaintiff does not fit into any category of these true reasons for termination. Plaintiff did not fight on company time or premises.

The tentative of management and Human Resources to tailor such category is tantamount to conspiracy and discrimination. Conspiracy because any tentative of more than one party to cause tort like fabricating a termination scenario is defined as though. Moreover the altercation in question did not take place on company time or premises. Discrimination because similar violations committed by coworkers were not treated as reasons for terminations on at least one occasion. Plaintiff was attacked on the premises of the café by coworker Abdullah Jihad who was not terminated. Defendants were non responsive to Plaintiff's discovery for the incident report objecting that it is privileged. Defendants declined admission of the incident and objected to the admission request as being vague and irrelevant[11]. Different treatment of similar violations took place on one other occasion at least like in Edgar's case as mentioned earlier in the first reply.

Defendants claim that no discriminatory remarks were made. On one occasion in the presence of Tara Peralta Mr. Pipher had told Plaintiff that during his work at Wendy's Burgers he had offered pork to an unwitting Jewish coworker as a joke.

---

[11] Defendants reply to Document request #7 on 9/18/06 and to request of Admission #1 on 10/13/06.

7

Ms. Peralta told Plaintiff that he could not run for office because he was not born an American. This exchange took place when Plaintiff expressed his discomfort advertising beef patties as buffalo meat burgers upon Ms. Peralta's request. Plaintiff thought it was deceptive and false advertisement as well as unbecoming of a Smithsonian exhibition, added to the availability of similarly priced products containing genuine buffalo meat on the same station.

Upon an unfavorable reaction from Ms. Peralta regarding his concerns Plaintiff had resorted to the excuse of running for office as a reason to refuse lying to American citizens and as a way to defuse the situation.

Ms. Peralta acknowledged Plaintiff's national origin contrary to Defendants' claim of not knowing it. Plaintiff submitted legal alien documentation to Defendants. Plaintiff provided a background check to Defendants. Ms. Peralta would also ask Plaintiff to refill his lunch plan waiver after Ramadan was over in November 2004. Plaintiff had opted for no lunch in October 2004 and explained the choice due to observance of fast. Defendants were knowledgeable of Plaintiff's national origin and religion i.e. ethnicity[12].

Larry Ponzi the café director described Plaintiff as "delusional, schizophrenic and overall psychotic"[13] yet Mr. Ponzi never expressed any of his opinions directly to Plaintiff. Defendants claim that no discriminatory comments were made which is false. Plaintiff concedes that no such comments were made directly.

Plaintiff's termination shows pretext, discrimination, conspiracy and malice. Detriment to Plaintiff's career was intentionally inflicted after termination as well. Retaliatory defamation shows in café director's testimony despite Mr. Ponzi's assurances of confidentiality in termination process. Defendants' actions are in violation of their own policy regarding fair treatment, diversity, zero tolerance and harassment-free workplace. Defendants' actions are extreme, outrageous and intentional. Defendants' actions are intentional because reasons were never disclosed to Plaintiff therefore occluding the possibility of choosing whether to continue working for employer.

---

[12] Ramadan in 2004 started in mid October at which date Defendants were signing up employees for lunch plans, Plaintiff conceded in his deposition that he has no proof of HR knowing about his political beliefs.
[13] Email from Larry Ponzi to Aidan Murphy, titled Re: Rami husseini, sent 9/14/05, 2:42 PM forwarded to Robin Cerrati 9/14/05, 3:01 PM, forwarded to Joseph Machicote 9/14/05, 3:07 PM, Ref. RA0064

8

Defendants continue to deny having an Anti-Semitic motivation[14]. Defendants' actions are outrageous because their Anti-Semitic motivation was never disclosed or even hinted at. Deception had lead to a retroactive post-traumatic effect in addition to being atrocious and uncivilized.

Thirdly: with regards to the Plaintiff not filing a complaint with the EEOC

Reply: Plaintiff had requested reinstatement during meeting with café director and superiors on August 16th 2005. Plaintiff asked Larry Ponzi to intervene on his behalf to change the decision of Human Resources and to view witnesses' accounts of incident. Plaintiff suggested a conditional reinstatement and probation period. None of Plaintiff's requests were granted. Plaintiff expressed intent to litigate during that meeting.

In response to the discovery request regarding their EEO policy implementation Defendants conceded that the responsibility for administrating EEO policy is that of "the Executive Vice President of Human Resources and all levels of management"[15]. The procedure includes "notification of the Legal Department and initiation of investigation to charges of discrimination". The process in an associate's case is done "by using the steps outlined in the Open Communication/Fair Treatment Policy"[16]. Defendants concede that the Be Aware hotline is an independent agency- a step exhausted by Plaintiff. Company Ombudsman admits to receipt of complaint prior to litigation[17] following the instigation of the Vice President of Corporate Communication, Cheryl Queen. Plaintiff had notified Ms. Queen of the unsuccessful Open Communication (Open Door) step[18] - which was also forwarded to Sarah Hada Senior Manager of Corporate Communications, Sarah Ellis, Natasha Bergeron and Kay Nelson.

---

[14] Defendants' memorandum and authorities dated 12/20/06 p. 1 "...still unclear to Defendants..."
[15] Communication regarding EEO from Recruitment and staffing section, department of Human Recourses, dated 1/1/05 pg. 1 Ref. RA0036
[16] Communication regarding EEO from Recruitment and Staffing section, department of Human Recourses, dated 1/1/05 pg. 2 Ref. RA0037
[17] Document titled Conversation by Phone with Rami Husseini, signed As per Joe Machicote VP Ombudsman, Ref. RA0062
[18] Email from Cheryl Queen sent 8/22/05, 10:00 AM replied to original message from Rami Elhusseini to Robin Cerrati, titled Settle this sent 8/20/05, 5:30 AM forwarded to Kay Nelson, Natasha Bergeron, Sarah Ellis, Sarah Hada, Ref. RA0066

Recipients all being senior management are required to ensure the implementation of EEO policies. Plaintiff also notified Vice President of Corporate Communications Ms. Queen of the unsuccessful second round of negotiations with Human Resources[19]. Plaintiff made his legal claim and intention to litigate very clear throughout these steps. Hence Defendants should be barred from using the lack of EEOC charges argument by the doctrines of estoppel, unclean hands and latches since they had claimed acting on behalf of EEOC and were aware of possible litigation.

Defendants proclaimed to the court on July 19th 2006 during the scheduling hearing that Plaintiff lacked the qualifications to be rehired as a member of an EEO committee.
Plaintiff suggested overseeing the application of EEOC requirements- in light of Plaintiff's claim of possible reconciliation parties were requested to reach a resolution.
No discovery reply to provide the qualifications requirements for serving on such a committee was responsive and request was objected to as vague and irrelevant. Defendants provided documents that show their awareness of the EEO policies and their responsibility to implement and oversee this process[20]. Defendants concede that Plaintiff exhausted every step described therein. Defendants insisted that no violation of EEO policy was committed at any level of management despite Plaintiff's request for an investigation independent of RA's Human Resources. This proves that Defendants refused Plaintiff's initiative for reconsideration through their EEO agency and shows the position of Defendants with regards to the issues at hand be it the termination or the promotion. Plaintiff exhausted all EEO steps available to an associate. Any separate charges to the EEOC would have been addressed against the EEOC agency within RA and Compass. The EEOC agency is not the adverse party of Plaintiff and its organization inside RA and Compass is irrelevant to the injustice that Plaintiff sought to have reversed. Moreover, in their objection to the lack of charges through the EEOC Defendants are seeking a resolution that they would have refused and therefore cannot be in good faith.

---

[19]Email from Rami Elhusseini to Cheryl Queen titled Rest. Asso. Sent 9/14/05, 1:27 PM, forwarded to Robin Cerrati, Ref. RA0068
[20] Recruitment and Staffing section of Human Resources Dept. dated 1/1/05., Bulletin Board Communication signed Gary R. Green CEO, Christopher Ashcroft Executive Vice President Human Resources Dated 1/1/05, Employment Policies, Be Aware hotline, Ref. RA0036-51.

Using the argument for the sole purpose of halting litigation is therefore an obstruction of the justice process and should not be allowed. Defendants were notified on several occasions of Plaintiff's intent to litigate and are in the obligation to file a report to the EEOC if they found Plaintiff's allegation to be in violation of EEOC coverage requirements and Open Door rules; Defendants should therefore be barred from using the argument of failure to report charges by the statute of limitation.

As for the allusion to Hon. Judge Collyer's dismissal of counts I and II of Mr. Carter v. the Post for example; in his case Mr. Carter had not exhausted all administrative remedies in requesting disability accommodation.

The Court of Hon. Judge Collyer found that Mr. Carter "...thus failed to notify the EEOC or the Post... in the Post's alleged failure to accommodate his disability after he requested accommodation"[21].

Mr. Carter was not terminated in similar circumstances as the issue at hand either. The termination was deemed warranted "for a continued pattern of insubordinate conduct, for continued violation of (Post) attendance policies and failing to cooperate in the (Post) investigation into absences"[22] what Mr. Carter doesn't dispute and which draws a closer similarity to RA and Compass's unyielding position with regards to Plaintiff's termination process and its investigation. The association is therefore irrelevant and does not provide solid grounds for a matching comparison. Pretext was proven against RA in termination and will be demonstrated in the lack of promotion.

In the Defendants claim to legitimately deny promotion:

Defendants dispute Plaintiff's claim of discriminatory denial of promotion based on lack of qualifications and to undue application process. Defendants are still unclear about Plaintiff's beliefs as to which basis of discrimination were these allegations made[23].

---

[21] Carter v Washington Post ca-05-1712(RMC), Ref. Exhibit 1 in Defendants' Motion for Summary Judgment p 5 prgh.2 l.20-23
[22] Carter v Washington post, Ref. Exhibit 1 Defendants' Motion for Summary Judgment,. P.3 prgh. 1 l.5-8.
[23] Plaintiff believes that anti-Semitism is the reason behind Defendants' discriminatory actions

<u>Reply:</u> Plaintiff responded to a job posting for cooks. During the hiring interview with Chef Richard Hetzler Plaintiff was asked about his expertise, work preferences and past experience. Plaintiff had discussed his past experience with Sous Chef Tara Peralta before the interview with Mr. Hetzler and had informed both interviewers about his academic background in Nutrition and Philosophy. Mr. Hetzler asked about Plaintiff's possible setbacks if he were hired. Plaintiff replied that working underground might be different from working in an open kitchen and seeing customers. Mr. Hetzler informed Plaintiff that he could be working with customers on the service line and that the job posting was indeed for both positions. Mr. Hetzler proceeded to inform Plaintiff that employees with good "people skills" can do a good job on the service line.

During orientation the café was described as a continuation of the Museum exhibit[24].

During indoctrination for the first two weeks of employment Plaintiff received a cook's training and was required to be knowledgeable of the cooking methods used in the restaurant. Line service included customary service procedure and knowledge of the origins, nutrient content and preparation method of each item.

Health and Sanitation Inspection in RA establishments is monitored by a private contractor where unannounced inspections of the premises are conducted to maintain competitive levels. The health inspector suggested to Sous Chef Peralta that Plaintiff be charged with the responsibility of keeping temperature logs on the service stations. Recommendation was not carried out and Plaintiff was not promoted.

Defendants claimed that deserved advancement in the company were part of its "commitment to (employee) future within Compass Group".

Defendants also promised "...dedication to developing the skills and talents of qualified individuals"[25]. Defendants made claims during orientation, employee meetings, company circulations, bulletin boards and literature.

Plaintiff discussed his Nutrition background with Chef Albert Lucas- who is the Supervising Chef with RA and who had trained Plaintiff during the Museum opening preparations.

---

[24] Smithsonian pamphlets, NMAI paraphernalia and literature.
[25] Overview of Company, Compass Group Welcome letter, Gary R. Green CEO, Ref. Employee Handbook

Mr. Lucas informed Plaintiff about possibility of sponsoring employee education. Ms. Peralta confirmed Mr. Lucas' statements. Ms. Jennifer Hancox addressing the newly hired café employees said that "RA's CEO started out as a bus boy" what Defendants refused to admit and objected to as "not reasonably calculated to lead to the discovery of admissible evidence and seeks irrelevant information"[26]. Defendants' ads and statements constitute a promise. It is customary to promote employees without prior application[27].

Plaintiff requested kitchen training and was granted request. Eligibility for promotion was the reason for training request. Chef Hetzler approved Plaintiff's request.

Chef Hetzler, in line with company "vision and values"[28], had often encouraged personal initiative in employee meetings specifically kitchen training.

Plaintiff was told training will start during low season. Most line servers hired the same date as Plaintiff were let go by low season. Promotion on the service line or to a beginner cook's position would be one of several possibilities of advancement within the company. Defendants claim that newly recruited cooks Derek Pipher and Janette O'Sullivan were more qualified than Plaintiff for cook positions. Mr. Pipher and Ms. O'Sullivan were less qualified than several cooks like Mr. Brett, Mr. David "Big Dave" or Mr. Tony all of whom trained them. New hires outranked the seniors. Failure of Defendants to honor the promised commitment refutes the argument of legitimacy in denying promotion.

Brett is a long time RA employee; he is an award winning Chef and was previously employed in a managerial capacity. The standards for evaluation differed from the ones claimed by Defendants[29] in the lack of promotion for Tony, David and Brett.

Tony was Chef Hetzler's aid and was delegated most of Chef Hetzler's responsibilities in his absence. David was partly in charge of the cold prep section and is a long time RA employee. Tony, David and Brett sought promotion.

The promotion of any of several able and qualified employees like Tony, David or Brett would have caused a vacancy on the cooking line for a beginner cook position.

---

[26] Defendants had similarly objected to admitting statement made by Compass CEO Gary Green in welcome letter. Fed Rules 36 a), 26 b) 1- of Civil Proceedings allows use of admission requests.
[27] Defendants must show that all promotions in RA were preceded by an application to disprove this point.
[28] Overview of Company, Gary R. Green CEO Ref. Employee Handbook
[29] Defendants' memorandum and authorities dated 12/20/06 p. 5 qualifications for cooks.

Newly hired employees were trained by senior RA employees and outranked them at least in title immediately after training. Plaintiff had asked Mr. Pipher about his culinary education in the presence of Brett and David. Discussion occurred before Mr. Pipher's promotion. Mr. Pipher admitted to not possessing a culinary degree but only an internship certificate. Mr. Pipher lacks the culinary degree or Chef certification. Mr. Pipher was namely awarded a Sous-Chef title while several more deserving candidates were not. Mr. Pipher was also granted access to the Chef office unlike Tony, Brett and David.

Mr.Pipher and Ms. O'Sullivan's only distinctive factor is their race. Tony is of Caribbean descent, Brett and David are African-American.

Defendants' argument of legitimacy in denying promotion due to Mr. Pipher and Ms. O'Sullivan's qualifications is irrelevant because promotion of Plaintiff doesn't require being promoted into positions filled by the new employees. Plaintiff made this point during deposition. Defendants recognize a breach of promise in not promoting qualified employees[30] but argue its legitimacy based on inexperience in the case of Plaintiff.

Defendants are liable for denying promotion by the doctrine of estoppel because they had committed through promise to promoting all qualified employees.

Plaintiff's qualifications are testified to by several letters of recommendations and awards[31]. Defendants denied promotion to several able employees who could have filled the mentioned positions thus honoring the commitment to them and creating a vacancy. Defendants intentionally practiced deception. Defendants' denial of promotion for Plaintiff and several employees shows pretext and is outrageous due to their motif. Defendants did not uphold the declared principles of the company. Defendants practiced uncivilized methods of administration and evaluation.

Defendants refused to admit the declared company principles[32] despite admitting to the legitimacy of a due promotion.

---

[30] Defendants' motion for summary judgment, "...RA has legitimate reason..." dated December 20, 2006.
[31] Plaintiff was awarded membership to the National Society of Collegiate Scholars by Howard University, and was accepted at an earlier date to the PhD program in Comparative Literature at Emory University.
[32] Defendants' objection and response to Plaintiff's request for admission #2 dated September 18, 2006.

14

Defendants should be barred from using the lack of charges through EEOC by the doctrine of unclean hands because they committed to affirmatively implement the EEOC policies[33].

Defendants' actions are extreme, outrageous and intentional. Defendants' actions are intentional because their policy and agenda were not disclosed to Plaintiff therefore occluding the possibility of choosing whether to continue working for employer. Defendants continue to deny having an Anti-Semitic motivation and a White Supremacist agenda despite clear connotations in their actions and demonstration thereof, well ahead of litigation.

Defendants were knowledgeable of Plaintiff's national origin because of his immigration status. Defendants were familiar with Plaintiff's religious background due to lunch plan modifications. Defendants' actions are outrageous because their Anti-Semitic motivation and White Supremacist agenda were never made visible or even hinted at making their post-traumatic effect retroactive in addition to being atrocious and uncivilized.

## In Conclusion:

Defendants RA and Compass should be liable for discriminatory termination and denial of promotion. Clear and Convincing evidence and Prima Facie in each claim were shown. Pretext was proven in termination and lack of promotion. Defendants' recourse to lack of EEOC charges is not warranted and solely used to halt litigation not to accommodate Plaintiff or reverse detriment caused by Defendants' policy.

Plaintiff therefore moves court for Summary Judgment[34] and respectfully asks for judgment entered in Plaintiff's favor on all claims.

Respectfully submitted
Rami Elhusseini, Plaintiff.    1/19/07

---

[33] Letter regarding EEO dated January 1st 2005, signed by Gary Green CEO and Christopher Ashcroft Vice President, Human Resources, Ref. RA0042.
[34] Fed Rule 56 a) of Civil Proceedings allowing claimant to move for Summary Judgment after service by adverse party of motion for Summary Judgment.

## CERTIFICATE OF SERVICE

I hereby certify that on January 19th 2007 a copy of the foregoing motion was served by hand upon the following:

Littler Mendelson, P.C. C\O Katherine Goetzl 1150 17th St. NW, Suite 900 Washington DC 20036

Rami Elhusseini, Pro-Se    1/19/07

*[signature]*