UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RAMI ELHUSSEINI**<br><br>**Plaintiff,**<br><br>v.<br><br>**COMPASS GROUP USA, INC., et al.**<br><br>**Defendants.** | **Case No. 1:06-cv-00100-RBW**<br>**FILED VIA ECF** |

### DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
### TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Civil Rule 7 and the Court's Order dated November 29, 2006, Defendants Compass Group USA, Inc. and Restaurant Associates, Inc., by counsel, hereby submit this reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment.[1]

### I. INTRODUCTION

As a preliminary matter, Plaintiff has failed to file a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement" as is required by Local Civil Rule 7(h). See Local Civil Rule 7(h). Therefore, in deciding Defendants' Motion for Summary Judgment, the Court may assume that Plaintiff admits all facts identified by Defendants in their Statement of Undisputed Material Facts. See id.

---

[1] Plaintiff submitted a document titled "Plaintiff's Motion for Summary Judgment" on January 19, 2007. Defendants are simultaneously filing a Motion to Strike that document to the extent Plaintiff seeks summary judgment on his claims. Plaintiff's Motion is untimely according to the Court's Order of November 29, 2006 setting a dispositive motion deadline of December 20, 2006. In this Reply, Defendants respond to Plaintiff's arguments to the extent they can

Plaintiff appears to believe that simply stating his opinion without offering any supporting evidence is sufficient to defeat summary judgment. However, as the nonmoving party, Plaintiff must come forward with admissible evidence establishing a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "And when, like here, the plaintiff maintains the ultimate burden of persuasion at trial, the defendant can meet the burden on its motion by simply identifying the absence of evidence supporting the plaintiff's case." Id. at 325. Plaintiff has utterly failed to identify any admissible evidence that would establish a genuine issue of material fact on any of his claims against Defendants.

## II. ARGUMENT

### A. Defendants' Reasons For Terminating Plaintiff Never Changed.

Plaintiff appears to argue that Defendants' reasons for terminating his employment are pretextual because those reasons "shifted" between August 14, 2005 and September 1, 2005. Plaintiff's Motion, pp. 2-4. However, contrary to Plaintiff's argument, Defendants' reasons for terminating Plaintiff's employment have been consistent from the day after he admittedly clocked out without authorization and started a fist fight with a coworker until today.

Plaintiff was initially suspended on August 14, 2005 for harassing his coworker, Chris Spangler, starting a fight with Mr. Spangler, and violating company policy and procedure. See August 14, 2005 Corrective Communication, Exhibit I to Defendants' Statement of Undisputed Material Facts. Importantly, during the meeting between Plaintiff and two of his supervisors – Tara Peralta and Derek Pipher – on August 14 when Plaintiff received the first Corrective Communication, Plaintiff admitted both that he clocked out without permission and that he

---

reasonably be construed as opposing Defendants' arguments for summary judgment.

2

started the fist fight with Mr. Spangler. See Plaintiff's Deposition, pp. 196-97, Exhibit A to Defendants' Statement of Undisputed Material Facts.

On August 16, 2005, Plaintiff was terminated for harassing Mr. Spangler, starting a fight with Mr. Spangler, and violating company policy and procedure. See August 16, 2005 Corrective Communication, Exhibit K to Defendants' Statement of Undisputed Material Facts. The August 16 Corrective Communication specifically states that "[Plaintiff] left his station without authorization and followed another coworker outside which led to a physical altercation." See id. Importantly, during the meeting between Plaintiff and three of his supervisors – Ms. Peralta, Courtney Willis, and Larry Ponzi – on August 16 when Plaintiff received the second Corrective Communication, Plaintiff again admitted that he clocked out without authorization. See Plaintiff's August 16, 2005 Statement, Exhibit J to Defendants' Statement of Undisputed Material Facts.

Finally, on September 1, 2005, Robin Cerrati, Vice President of Human Resources, wrote a letter to Plaintiff denying his request to be reinstated. See Letter from Robin Cerrati to Plaintiff dated September 1, 2005, Exhibit M to Defendants' Statement of Undisputed Material Facts. In that letter, Ms. Cerrati reiterated that Plaintiff was terminated for "walking off the job, disorderly conduct, and insubordination" and "mishandling of a workplace issue that resulted in workplace violence – fighting on company time with the intent to harm another employee." See id.

Contrary to what Plaintiff would like the Court to believe, Defendants' reasons for terminating Plaintiff's employment have been consistent since August 14, 2005 and throughout the course of this litigation. Defendants terminated Plaintiff for clocking out without authorization and starting a fist fight with a coworker, and Plaintiff has repeatedly admitted that those reasons for his termination are true.

**B.     There Is No Evidence That Any Similarly Situated Person Outside The Protected Class Was Treated Differently Than Plaintiff.**

Plaintiff next attempts to argue that two of his coworkers committed policy violations similar to his, but were not terminated. However, Plaintiff has provided no admissible evidence to support these allegations.

Plaintiff argues that Mr. Spangler made threats on company premises and was not reprimanded for violating company policy. Plaintiff's Motion, p. 5. Plaintiff's argument is flawed for several reasons. First, the written statement upon which Plaintiff relies to support the allegation that Mr. Spangler made threats is hearsay, which cannot be considered when deciding Defendants' Motion for Summary Judgment. <u>See</u> Statement of Hobart Wilson dated August 22, 2005, Exhibit 1d to Plaintiff's Motion. Second, Plaintiff has presented no evidence that Mr. Spangler was not disciplined for making threatening remarks to Plaintiff. Third, even if it were true that Mr. Spangler was not disciplined for making threatening remarks to Plaintiff,[2] Mr. Spangler is not a proper comparator. Plaintiff's clocking out without authorization and starting a fist fight with Mr. Spangler cannot be equated with Mr. Spangler's allegedly making threatening remarks after being beaten up by Plaintiff. Lastly, in the absence of any evidence of Mr. Spangler's national origin or religion, Plaintiff simply cannot meaningfully compare his treatment by Defendants to Mr. Spangler's treatment.

Plaintiff next argues that a coworker named Edgar left work without permission and was not reprimanded for violating company policy. Plaintiff's Motion, p. 5. Like Plaintiff's argument regarding Mr. Spangler, his argument regarding Edgar is flawed for multiple reasons. First, Plaintiff cites to two written statements which are hearsay and thus cannot be considered at

---

[2] Mr. Spangler was terminated by Defendants on August 19, 2005 for reasons unrelated to Plaintiff. However, as Plaintiff notes, Mr. Wilson's statement is dated August 22, 2005.

4

this stage of the proceedings. See Statement of Hobart Wilson dated August 22, 2005 and Statement of Edgar dated August 22, 2005, Exhibits 1d and 1e to Plaintiff's Motion. Second, Plaintiff has no evidence to support his assertions that Edgar "left his work without permission" or "did not clock out." Plaintiff's Motion, p. 5. Nor does Plaintiff have any evidence that "the manager did not find it necessary for Edgar to get permission prior to leaving the workplace." Id. Finally, even if Plaintiff and Edgar did commit the same policy violation by clocking out without permission, a comparison of how they were disciplined is worthless. There is no evidence of Edgar's national origin and religion, and no evidence that Edgar started a fist fight with a coworker like Plaintiff.

Plaintiff admits that "coworkers who abandoned their workstation before their shift was finished were terminated." Plaintiff's Motion, p. 7. In addition, Plaintiff admits that fighting and violating company policy are valid reasons for termination. Id. Furthermore, Plaintiff admits that he clocked out without permission and that he started the fist fight with Mr. Spangler. See Plaintiff's Deposition, pp. 196-97.

Plaintiff has nothing but speculation to support his allegations that he was treated differently from other employees who committed similar policy violations.

### C.   The Remarks Alleged By Plaintiff Are Stray Remarks At Most.

Plaintiff claims that the following remarks were made during his employment: (1) Mr. Pipher "told Plaintiff that during his work at Wendy's Burgers he had offered pork to an unwitting Jewish coworker as a joke;" and (2) Ms. Peralta "told Plaintiff that he could not run for office because he was not born an American."[3] Plaintiff's Motion, pp. 7-8. However, these remarks do not create an inference of discrimination. At most, they are stray remarks because

---

[3] Mr. Ponzi's statements about Plaintiff do not refer in any way to Plaintiff's religion or national

they were not made by the individuals who made the promotion and termination decisions regarding Plaintiff and they were not made in relation to either of those decisions. See Threadgill v. Spellings, 377 F. Supp. 2d 158, 164 (D.D.C. 2005) (stray remarks are generally comments made in isolated situations or made out of context of the employment decision); Hussain v. Principi, 344 F. Supp. 2d 86, 100 (D.D.C. 2004) (stray remarks are insufficient to create a triable issue of discrimination where they are unrelated to an employment decision involving plaintiff or are made by a person who was not involved in the employment decision), aff'd, 435 F.3d 359 (D.C. Cir.), cert. denied, 127 S. Ct. 494 (2006); Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 12 (D.D.C. 2000) (to be probative, remarks must be by the decision maker and related to the adverse employment decision), aff'd, 298 F.3d 989 (D.C. Cir. 2002).

### D.     Plaintiff Failed To Exhaust His Administrative Remedies And Presents No Evidence To Excuse His Failure.

Plaintiff did not exhaust his administrative remedies as is required to pursue a Title VII claim, and he offers no evidence to excuse his failure. Plaintiff's alleged requests for reinstatement, expressions of intent to litigate, call to the Be Aware hotline, and electronic mail messages to various company officials neither satisfy nor excuse the requirement that Plaintiff file a charge with the EEOC. In addition, Plaintiff has knowledge of the EEOC as he has contacted it in the past. See Plaintiff's Deposition, pp. 26-27. Furthermore, Plaintiff's failure to file an EEOC charge was discussed at the June 29, 2006 scheduling conference with the Court. Plaintiff apparently has taken no action in the seven months since that conference to remedy his failure.

---

origin and therefore cannot be evidence of discriminatory animus.

Plaintiff contends that Defendants should not be permitted to argue that his Title VII claim is barred due to his failure to exhaust because Defendants "had claimed acting on behalf of EEOC." Plaintiff's Motion, p. 10. Plaintiff cites no evidence to support this outlandish allegation. This is because there is none. Plaintiff also asserts that Defendants should not be permitted to argue failure to exhaust because they would have refused to resolve his claims at the administrative level. This is pure speculation on Plaintiff's part because he never filed an administrative charge and therefore Defendants had no opportunity to resolve this matter at the EEOC.[4]

Plaintiff has no evidence that he exhausted his administrative remedies with respect to his Title VII claim. Nor does he have any evidence of wrongdoing by Defendants that might excuse his failure to file an EEOC charge.

### E. **Plaintiff Has No Evidence That He Was Denied Promotion Due To Discrimination.**

As an initial matter, Plaintiff has no credible evidence that Defendants promised him a promotion at any time. Certainly, an alleged suggestion by the Health Inspector that Plaintiff be given temperature log responsibilities cannot be construed as a promise of promotion by Defendants.

In Plaintiff's deposition, he claimed that he wanted to be promoted to the chef jobs held by Derek Pipher and Janette O'Sullivan.[5] See Plaintiff's Deposition, pp. 120-26. However, now that Defendants have shown that Plaintiff was not qualified for either of those chef positions,[6]

---

[4] Defendants in fact did participate in good faith at a settlement conference with the Court in November 2006.
[5] Plaintiff has no evidence to support his claim that employees are customarily promoted without applying for promotion. Plaintiff's Motion, p. 13. In addition, Plaintiff's statement that Defendants must disprove his claim shows his fundamental misunderstanding of the fact that he bears the burden of proof on his claims. Plaintiff's Motion, p. 13, n. 27.
[6] Plaintiff attaches a number of awards and letters of recommendation to his Motion. See Exhibit

7

Plaintiff is attempting to change his claim. It appears Plaintiff now contends that other employees - who he believes were more qualified than Mr. Pipher and Ms. O'Sullivan - should have been promoted to the jobs filled by Mr. Pipher and Ms. O'Sullivan. Plaintiff's Motion, p. 13. According to Plaintiff, if those other employees had been promoted, then a beginner cook position would have become vacant to which he could have been promoted.

Plaintiff overlooks the fact that to establish a <u>prima facie</u> case of discriminatory non-promotion, one of the four elements he must show is that he applied for and was qualified for an <u>available</u> position. See <u>Lathram v. Snow</u>, 336 F.3d 1085, 1089 (D.C. Cir. 2003); <u>Hayslett v. Perry</u>, 332 F. Supp. 2d 93, 99 (D.D.C. 2004). Plaintiff simply cannot base his failure to promote claim on his allegation that he was not promoted to a beginner cook position that was not vacant.

### F. **Plaintiff Has Conceded His Intentional Infliction Of Emotional Distress Claim.**

Plaintiff has not opposed Defendants' arguments regarding his intentional infliction of emotional distress claim. Accordingly, Plaintiff has conceded that claim.

### III. CONCLUSION

For the foregoing reasons as well as those stated in their Motion for Summary Judgment, Defendants Compass Group USA, Inc. and Restaurant Associates, Inc. respectfully request that the Court grant their Motion for Summary Judgment.

---

3 to Plaintiff's Motion. However, none of those awards or recommendations has anything to do with Plaintiff's cooking abilities.

Dated:  February 1, 2007	Respectfully submitted,

LITTLER MENDELSON, P.C.

By: /s/ Katherine A. Goetzl
  Paul J. Kennedy (D.C. Bar No. 428623)
  Katherine A. Goetzl (D.C. Bar No. 457660)
  1150 17th Street N.W., Suite 900
  Washington, DC  20036
  202.842.3400  telephone
  202.842.0011  facsimile

  Counsel for Defendant Compass Group USA, Inc.
  and Defendant Restaurant Associates, Inc.

9

**CERTIFICATE OF SERVICE**

    I hereby certify that, on February 1, 2007, a copy of the foregoing Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment was served by first class mail, postage prepaid, upon the following:

> Rami Elhusseini
> 2517 Mozart Place, NW
> Apt. 103
> Washington, DC  20009
>
> Plaintiff pro se

        /s/ Katherine A. Goetzl
        Katherine A. Goetzl

Firmwide:81965139.1 024778.1145