UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*Rami Elhusseini,*
*Plaintiff*

*V.*

*Compass Group Inc.,*
*Restaurant Associates,*
*Defendants*

Civil Action No: 06-0100, RBW

## PLAINTIFF'S OPPOSITION OF DEFENDANTS' MOTION TO STRIKE

Pursuant to Local Rule b) Plaintiff Rami Elhusseini hereby submit his opposition to Defendants Restaurant Associates (RA) and Compass Group USA (Compass)'s Motion to Strike filed on 2/1/07 and received by Plaintiff on 2/5/07.

### Statement of Points and Authorities.

Plaintiff filed his motion for summary judgment on 1/19/07 as opposition to Defendants' motion for summary judgment as by Federal Rule 56 a) of the Civil Proceedings allowing claimant to move for Summary Judgment after service by adverse party of motion for Summary Judgment. Motion was only possible after 12/20/06 since Defendants only filed their motion on that date. As an opposition Plaintiff's motion falls within the 24th of January deadline set by the court on November 29, 2006.

Defendants refer to Local Civil Rule 7 (h) in their request for a "separate concise statement of genuine issue setting forth all material facts" which proves that Plaintiff's motion was treated as an opposition to their summary judgment as the Rule specifies.

Plaintiff included a statement of "Points Authorities and Material Facts" in the reply to Defendants' motion for summary judgment. The statement included "where appropriate a concise statement of facts" relating to each point mentioned and accompanied it by a footnote. Each footnote referenced a document(s) that Defendants provided and ratified.

RECEIVED
FEB - 7 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Plaintiff will include a separate statement listing all the material facts used in the argumentation of the motion Defendants are objecting to. Plaintiff had included a separate table of contents for the exhibits which clearly states the undisputable facts. Plaintiff will "copy and paste" from the previous statement to oblige Defendants request but will not reproduce the exhibits to avoid duplication.

Plaintiff replied to Defendants' motion for summary judgment along the lines of the court's recommendation for brevity. Plaintiff believes that the issues at hand have been demonstrated and proven and therefore sufficient to result in a fair judgment without the additional expenditure of the court's time and resources through the proceedings of a trial. Defendants contend that the statements and company policies shown by Plaintiff are "stray opinions" and "hearsay" despite the company seal and reference number present on every document of the exhibits. Defendants state "Plaintiff has conceded his intentional infliction of emotional distress claim" despite the proof of pretext in their actions and admission of the café manager Mr. Larry Ponzi to labeling Plaintiff as a candidate for the infliction of emotional distress.

## In Conclusion

Defendants can only extend the time for reversing the inequities propagated through their policies. In doing so however, Defendants are willfully not abiding by the requirements to minimize the expenditure of the court's as well as the taxpayers' time and resources. The clear refusal to amend Plaintiff's concerns through an Equal Employment Opportunity intervention proves their intent. Yet Defendants claim on page 6 of their reply filed on February 1st that Plaintiff had not filed an EEOC claim since June 29, 2006; which would have been sheer and unnecessary duplication. The gravity of the issues in this case and the willful avoidance of the justice process could justify a full trial to which Plaintiff is not opposed per-se, however the intent is clear and the brevity is warranted by the perseverance and efficacy of the judicial system. Plaintiff therefore moves the court to grant his request for summary judgment on his claims of unjust termination, lack of promotion and intentional infliction of emotional distress motivated by the Anti-Semitic policies of Defendants Restaurant Associates and Compass Group USA.

Respectfully Submitted,

Rami Elhusseini, Pro Se, 2/7/07.

## CERTIFICATE OF SERVICE

I hereby certify that on February 7th 2007 a copy of the foregoing motion was served by hand upon the following:

<u>Littler Mendelson, P.C. C\O Katherine Goetzl 1150 17th St. NW, Suite 900 Washington DC 20036</u>

Rami Elhusseini, Pro-Se    2/7/07

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*Rami Elhusseini,*
*Plaintiff*

*V.*                                                    } Civil Action No: 06-0100, RBW

*Compass Group Inc.,*
*Restaurant Associates,*
*Defendants*

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 7 (h) and the Defendants request of a reformulated list of material facts, Plaintiff hereby submits his Statement of Undisputed Material Facts in support of his motion for summary judgment.

The termination procedure:

1- Defendants claimed "harassment, violation of company policy or procedure, attempts to fight on company policy" with two prior verbal warnings in the incident report dated 14th of August 2005[1].

2- Defendants changed their position to "harassment, violation of company policy or procedure, fighting on company time" without prior verbal warnings in the termination report dated 16th August 2005[2]- neither reports signed by Plaintiff.

3- Defendants then adopted "walking off the job, disorderly conduct, insubordination, mishandling of a workplace issue that resulted in workplace violence, fighting on company time with the intent to harm another employee" as well as failure to "seek out

RECEIVED

FEB - 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

---
[1] Report of incident (corrective communication for non-exempt associates) dated 8/14/05 Ref. RA0052
[2] Report of incident (corrective communication for non-exempt associates), dated 8/16/05 Ref. RA0053

1

the proper venue of available management or Human Resources counsel" according to the Human Resources Vice-President letter dated September 1st 2005[3].

4- Defendants settled on "clocking out without permission and starting a fight with a coworker" which is the current position upheld through counsel.

5- An electronic communication dated 14th August 2005 from Sous-Chef Tara Peralta also writes "Rami …had premeditated this whole situation…I will ask Derek to write up a statement about this situation as well and leave it on Larry and Courtney's desk. Rich is planning on calling HR tomorrow and verify we can terminate for these reasons"[4].

6- Plaintiff's decision to opt for "out for the day" instead of "out for lunch" option absolves the company from any liability with regards to his actions during employment, as if lunch were to be purchased outside of the Museum building.

7- Defendants concede that lunch is a reason to clock out.

8- When incident between Plaintiff and Mr. Spangler was investigated the given reason for termination was "attempt to fight on company time", lunch being company time.

9- Plaintiff replied that upon clocking out for lunch he'd opted for "out for the day" instead of "out for lunch" option.

10- Plaintiff was expected to clock out[5] as Ms. Peralta concedes. She further states the need to "verify we can terminate for these reasons".

11- In his statement dated the 15th August 2005[6], referred to in Sous-Chef Peralta's communication, Mr. Pipher characterizes the actions of coworkers Edgar and Hobart as restraining Plaintiff while Mr. Spangler exited the museum.

12- This characterization was used as a pretext for termination in the first incident report made on the 14th and was denoted as "attempt to fight on company policy, violation of company policy".

13- Mr. Pipher's characterization was also used in the termination report made on the 16th as "fighting on company time, violation of company policy".

14- Witnesses accounts dated on the 22nd August 2005 fail to corroborate Mr. Pipher and Ms. Peralta's accounts.

---

[3] Letter from Robin Cerrati Vice-President of Human Resources, 9/1/05 Ref. RA0063
[4] Email from Tara Peralta to Courtney Willis, Richard Hetzler, Larry Ponzi, titled Tara Statement, sent 8/14/05, 1:37 PM. Ref. RA0054
[5] Colleagues expected Plaintiff's break which excludes the need for a permission per se, Ref. RA0054
[6] Statement from Derek Pipher, signed Derek Pipher NMAI Sous Chef dated 8/15/05 Ref. RA0057

15- Mr. Hobart Wilson wrote that "Chris and Edgar began making threatening remarks at Rami (who) just laughed, and Edgar told Chris to go home that he had work to do at no time was Rami restrained and Rami returned to the café and Chris left"[7]

16- Mr. Edgar conceded that he did not clock out nor get a permission to leave the café and that Plaintiff did not act violently on company premises: "Chris came in and asked me to step outside...I notice there was a group of people outside that was watching the incident and nobody intervene so I kept stepping at Ramie"[8].

17- The place of the altercation falls exclusively under the jurisdiction of the District of Columbia Police Department which entitles Mr. Spangler to file a report had he felt harassed by Plaintiff.

18- On August 13th 2005 upon discovering the damage done to Plaintiff's locker[9], Mr. Pipher asked Plaintiff to gather his belongings in a trash bag and leave it in the Chef's office.

19- Mr. Pipher did not make any tentative to investigate the incident through Human Resources or any other manager than himself.

20- Mr. Pipher had refused to consider Mr. Spangler a possible agent of damage done to Plaintiff's locker.

21- Mr. Pipher's statement dated August 15th 2005 acknowledges that he and Ms. Peralta conferred with Mr. Spangler on the 13th regarding his argument with Plaintiff.

22- Mr. Pipher further states that "Chris had been given permission by me to leave early at 4pm".

23- Defendants claim Plaintiff did not report argument with coworker on August 13th prior to their fist fight.

24- Mr. Pipher stated on August 15th that "until I could contact Richard or other management" and "after talking with other management Tara and (I) determined that Rami would be suspended pending an investigation".

25- Mr. Pipher acknowledges contacting "other management" than Chef Hetzler who is supposedly the decision maker according to the Defendants[10].

---

[7] Statement from Hobart Wilson, dated 8/22/05, Ref. RA0058
[8] Statement from Mr. Edgar, signed and dated 8/22/05, Ref. RA0059
[9] Plaintiff found his locker damaged and unusable; door had to be pried open to recover belongings before Plaintiff could return home once shift was over. Statement of Mr. Pipher dated 8/15/05 Ref. RA0057.

26- Mr. Pipher did not contact "other management" about Plaintiff's busted locker

27- Defendants claim that Plaintiff did not know of any similarly situated person from outside the protected class who was treated differently and that Plaintiff acknowledges the truth of Defendants' termination reasons and that Defendants did not make any discriminatory comments

28- Plaintiff concedes that coworkers who abandoned their workstation before their shift was finished were terminated in reply to the question on whether the company fired previous employees for walking off the job

29- Plaintiff had finished his shift, was expected to get a lunch break and did return to his station finish his workload as Defendants concede.

30- Plaintiff was attacked on the premises of the café by coworker Abdullah Jihad who was not terminated. Defendants were non responsive to Plaintiff's discovery for the incident report objecting that it is privileged. Defendants declined admission of the incident and objected to the admission request as being vague and irrelevant[11].

31- Plaintiff submitted legal alien documentation to Defendants. Plaintiff provided a background check to Defendants.

32- Ms. Peralta would also ask Plaintiff to refill his lunch plan waiver after Ramadan was over in November 2004.

33- Plaintiff had opted for no lunch in October 2004 and explained the choice due to observance of fast.

34- Defendants were knowledgeable of Plaintiff's national origin and religion i.e. ethnicity[12].

35- Larry Ponzi the café director described Plaintiff as "delusional, schizophrenic and overall psychotic"[13]

---

[10] Affidavit from Richard Hetzler "Declaration of Mr. Hetzler" regarding hiring procedure, dated 12/19/06, Ref. Exhibit C in Defendant's Material Facts in support of Summary Judgment
[11] Defendants reply to Document request #7 on 9/18/06 and to request of Admission #1 on 10/13/06.
[12] Ramadan in 2004 started in mid October at which date Defendants were signing up employees for lunch plans, Plaintiff conceded in his deposition that he has no proof of HR knowing about his political beliefs.
[13] Email from Larry Ponzi to Aidan Murphy, titled Re: Rami husseini, sent 9/14/05, 2:42 PM forwarded to Robin Cerrati 9/14/05, 3:01 PM, forwarded to Joseph Machicote 9/14/05, 3:07 PM, Ref. RA0064

4

### With regards to the Plaintiff not filing a complaint with the EEOC

36- Defendants conceded that the responsibility for administrating EEO policy is that of "the Executive Vice President of Human Resources and all levels of management"[14]

37- Defendants concede that the Be Aware hotline is an independent agency- a step exhausted by Plaintiff.

38- Company Ombudsman admits to receipt of complaint prior to litigation[15]

39- Plaintiff had notified Ms. Queen of the unsuccessful Open Communication (Open Door) step[16] -which was also forwarded to Sarah Hada Senior Manager of Corporate Communications, Sarah Ellis, Natasha Bergeron and Kay Nelson.

40- Plaintiff also notified Vice President of Corporate Communications Ms. Queen of the unsuccessful second round of negotiations with Human Resources[17].

41- Plaintiff made his legal claim and intention to litigate very clear throughout these steps.

42- Defendants proclaimed to the court on July 19th 2006 during the scheduling hearing that Plaintiff lacked the qualifications to be rehired as a member of an EEO committee.

43- Defendants provided documents that show their awareness of the EEO policies and their responsibility to implement and oversee this process[18].

### In the Defendants claim to legitimately deny promotion:

44- Defendants dispute Plaintiff's claim of discriminatory denial of promotion based on lack of qualifications and to undue application process.

45- Plaintiff responded to a job posting for cooks.

---

[14] Communication regarding EEO from Recruitment and staffing section, department of Human Recourses, dated 1/1/05 pg. 1 Ref. RA0036

[15] Document titled Conversation by Phone with Rami Husseini, signed As per Joe Machicote VP Ombudsman, Ref. RA0062

[16] Email from Cheryl Queen sent 8/22/05, 10:00 AM replied to original message from Rami Elhusseini to Robin Cerrati, titled Settle this sent 8/20/05, 5:30 AM forwarded to Kay Nelson, Natasha Bergeron, Sarah Ellis, Sarah Hada, Ref. RA0066

[17] Email from Rami Elhusseini to Cheryl Queen titled Rest. Asso. Sent 9/14/05, 1:27 PM, forwarded to Robin Cerrati, Ref. RA0068

[18] Recruitment and Staffing section of Human Resources Dept. dated 1/1/05., Bulletin Board Communication signed Gary R. Green CEO, Christopher Ashcroft Executive Vice President Human Resources Dated 1/1/05, Employment Policies, Be Aware hotline, Ref. RA0036-51.

46- During the hiring interview with Chef Richard Hetzler Plaintiff was asked about his expertise, work preferences and past experience.

47- Plaintiff had discussed his past experience with Sous Chef Tara Peralta before the interview with Mr. Hetzler and had informed both interviewers about his academic background in Nutrition and Philosophy.

48- Mr. Hetzler asked about Plaintiff's possible setbacks if he were hired.

49- Plaintiff replied that working underground might be different from working in an open kitchen and seeing customers.

50- Mr. Hetzler informed Plaintiff that he could be working with customers on the service line and that the job posting was indeed for both positions.

51- Mr. Hetzler proceeded to inform Plaintiff that employees with good "people skills" can do a good job on the service line.

52- During orientation the café was described as a continuation of the Museum exhibit[19].

53- During indoctrination for the first two weeks of employment Plaintiff received a cook's training and was required to be knowledgeable of the cooking methods used in the restaurant.

54- Line service included customary service procedure and knowledge of the origins, nutrient content and preparation method of each item.

55- Health and Sanitation Inspection in RA establishments is monitored by a private contractor where unannounced inspections of the premises are conducted to maintain competitive levels.

56- The health inspector suggested to Sous Chef Peralta that Plaintiff be charged with the responsibility of keeping temperature logs on the service stations.

57- Recommendation was not carried out and Plaintiff was not promoted.

58- Defendants claimed that deserved advancement in the company were part of its "commitment to (employee) future within Compass Group".

59- Defendants also promised "...dedication to developing the skills and talents of qualified individuals"[20].

---

[19] Smithsonian pamphlets, NMAI paraphernalia and literature.
[20] Overview of Company, Compass Group Welcome letter, Gary R. Green CEO, Ref. Employee Handbook

60- Defendants made claims during orientation, employee meetings, company circulations, bulletin boards and literature.

61- Plaintiff discussed his Nutrition background with Chef Albert Lucas- who is the Supervising Chef with RA and who had trained Plaintiff during the Museum opening preparations.

62- Mr. Lucas informed Plaintiff about possibility of sponsoring employee education.

63- Ms. Peralta confirmed Mr. Lucas' statements.

64- Ms. Jennifer Hancox addressing the newly hired café employees said that "RA's CEO started out as a bus boy" what Defendants refused to admit and objected to as "not reasonably calculated to lead to the discovery of admissible evidence and seeks irrelevant information"[21].

65- Defendants' ads and statements constitute a promise.

66- It is customary to promote employees without prior application[22].

67- Plaintiff was told training will start during low season.

68- Most line servers hired the same date as Plaintiff were let go by low season.

69- Promotion on the service line or to a beginner cook's position would be one of several possibilities of advancement within the company.

70- Defendants claim that newly recruited cooks Derek Pipher and Janette O'Sullivan were more qualified than Plaintiff for cook positions.

71- Mr. Pipher and Ms. O'Sullivan were less qualified than several cooks like Mr. Brett, Mr. David "Big Dave" or Mr. Tony all of whom trained them.

72- New hires outranked the seniors. Failure of Defendants to honor the promised commitment refutes the argument of legitimacy in denying promotion.

73- The standards for evaluation differed from the ones claimed by Defendants[23] in the lack of promotion for Tony, David and Brett.

74- Tony was Chef Hetzler's aid and was delegated most of Chef Hetzler's responsibilities in his absence.

---

[21] Defendants had similarly objected to admitting statement made by Compass CEO Gary Green in welcome letter. Fed Rules 36 a), 26 b) 1- of Civil Proceedings allows use of admission requests.
[22] Defendants must show that all promotions in RA were preceded by an application to disprove this point.
[23] Defendants' memorandum and authorities dated 12/20/06 p. 5 qualifications for cooks.

75- David was partly in charge of the cold prep section and is a long time RA employee.

76- Tony, David and Brett sought promotion.

77- Newly hired employees were trained by senior RA employees and outranked them at least in title immediately after training.

78- Plaintiff had asked Mr. Pipher about his culinary education in the presence of Brett and David.

79- Discussion occurred before Mr. Pipher's promotion.

80- Mr. Pipher admitted to not possessing a culinary degree but only an internship certificate.

81- Mr. Pipher was namely awarded a Sous-Chef title

82- Mr. Pipher was also granted access to the Chef office unlike Tony, Brett and David.

83- Mr.Pipher and Ms. O'Sullivan's only distinctive factor is their race.

84- Tony is of Caribbean descent.

85- Brett and David are African-American.

86- Plaintiff's qualifications are testified to by several letters of recommendations and awards[24]

87- Defendants refused to admit the declared company principles[25] despite admitting to the legitimacy of a due promotion.

## CERTIFICATE OF SERVICE

I hereby certify that on February 7th 2007 a copy of the foregoing motion was served by hand upon the following:

Littler Mendelson, P.C. C\O Katherine Goetzl 1150 17th St. NW, Suite 900 Washington DC 20036

Rami Elhusseini, Pro-Se   2/7/07

---

[24] Plaintiff was awarded membership to the National Society of Collegiate Scholars by Howard University, and was accepted at an earlier date to the PhD program in Comparative Literature at Emory University.

[25] Defendants' objection and response to Plaintiff's request for admission #2 dated September 18, 2006.

8